KOPLIN v. SHARTLE BROTHERS MACHINE CO. et al.

1. That the court gave in charge to the jury certain equitable maxims upon the trial of an equity suit — the equity of the suit relating only to the remedy — is not ground for new trial at the instance of the plaintiff in the equity case, where it appears that the court specifically instructed the jury that plaintiff was entitled to recover and furnished to the jury the correct measure of damage.

2. Where, upon the trial of an equitable action analogous to an action of trover for the recovery of personal property wrongfully converted, the plaintiff elected to demand a verdict for damages alone, it was not erroneous to charge that the plaintiff is entitled to recover "the highest proven market value" between the date of the conversion and the date of the trial. If the instruction given is, in any case of the character indicated, erroneous, it is not harmful to the plaintiff where the personalty has a market value, and where the entire evidence on the question of value relates to market value.

3. Admissions or allegations of fact in a pleading are conclusive only

between the parties to the case, or their privies, and for all the purposes regarding the issue arising from that particular pleading, unless acted upon so to work an estoppel.

4. The evidence authorized the verdict. .

No. 1611. SEPTEMBER 20, 1920.

Equitable petition. Before Judge Park. Wilkinson superior court. July 14, 1919.

Shartle Brothers Machine Company (called Shartle Bros.) instituted an action of trover against the Pynetree Paper Company (called Pynetree Co.) in Wilkinson superior court, for the recovery of certain paper-mill machinery. The petition alleged that the machinery was of the value of $5,000 and the yearly rental value of $2,000. In the affidavit to obtain bail filed with the petition, the value of the property is alleged to be $5,000. Thereafter, K. Koplin filed an equitable petition in Wilkinson superior court against Shartle Bros., Pynetree Co., and the sheriff of Wilkinson county. In his petition he alleged that he had sold the paper-mill machinery to ·Shartle Bros. for $4250. Shartle Bros. gave to plaintiff a check for $2,000 as the initial payment, and agreed to pay the balance of $2250 when the machinery was loaded on cars. Shartle Bros. instructed its bank to refuse payment of the check, and payment was accordingly refused, prior to the filing of the trover suit by Shartle Bros., against the Pynetree Co. Upon receipt of notice of the non-payment of the check the plaintiff cancelled the contract of sale. The Pynetree Co. has no interest in the machinery, but was the agent of the plaintiff in charge of the same. The plaintiff can not, under the laws of Georgia, intervene in the trover suit, and can not give bond and take possession of the property in that action. He further alleged, that Shartle Bros. intended to give bond to the sheriff and remove the property from the State, and that the sheriff intended to accept such bond and surrender the. possession of the property to Shartle Bros. The prayers of the petition were that Shartle Bros. be enjoined from giving a bond and from removing the property from the premises of the Pynetree Company; that the sheriff be restrained from accepting the bond and from delivering the property to Shartle Bros.; that the Pynetree Company be enjoined from surrendering possession of the property either to the sheriff or to the plaintiff in the trover suit; that the plaintiff be permitted to give a bond conditioned according to the order of the court, and to take

possession of and dispose of the property; and that Shartle
Bros. be enjoined from prosecuting the trover suit. The plaintiff
attached to his petition as exhibits copies of the contract of sale,
the trover suit, and affidavit to obtain bail. Upon the presenta-
tion of the petition the judge ordered that the defendants be re-
strained as prayed, and that the plaintiff be allowed to give bond
in the sum of $10,000, "conditioned to pay to the defendant
Shartle Bros. Machine Company any damage which may be caused
to the said Shartle Bros. Machine Company on account of the
filing of this petition and the taking possession of the property
described" therein "by the said petitioner."

The plaintiff failed to execute the bond within the time limited
by the order, and upon application of Shartle Bros. it was allowed
to give bond in the sum of $10,000, conditioned to pay the plain-
tiff in the equity suit any damage which he might sustain on ac-
count of the removal of the property. Shartle Bros. executed the
bond and took possession of the property. Shartle Bros. and
Pynetree Co. filed an answer to the equity suit. Shartle Bros. in-
sisted upon the validity of the contract of sale, and asserted title
to the machinery. Pynetree Co. alleged that it was the agent of
the plaintiff Koplin, in possession of the property; that the prop-
erty was of a value in excess of $5,000; and that the yearly rental
value thereof was in excess of $2,000.

On the interlocutory hearing the court passed an order restrain-
ing the prosecution of the trover suit, and requiring the parties
thereto to assert their rights in the equity case. It was further
ordered that the bond theretofore given by Shartle Bros. should
stand in lieu of the property, subject to the conditions of the bond
as provided in the previous order of the court, "and as provided
by statute." Upon the trial of the case the court ruled that the
non-payment of the check given by Shartle Bros. amounted to a
breach of the contract; and the jury returned a verdict for the
plaintiff against Shartle Bros. for $4250. The plaintiff filed his
motion for new trial, which was subsequently amended. The mo-
tion was overruled, and he excepted.

*Robert C. & Philip H. Alston* and *Allen. & Pottle,* for plaintiff.
*Victor Davidson, G. H. Carswell,* and *J. S. Davis,* for defendants.

GEORGE, J. (After stating the foregoing facts.) The motion
for new trial raises three questions. Upon the trial the court

charged the jury as follows: "Equity jurisdiction is established by the law for the protection and relief of the parties, where from any peculiar circumstances the operation of the general rules of law would be deficient in protecting from anticipated wrong, or relieving for injuries done. Equity is ancillary, not antagonistic to the law; hence equity follows the law where the rule of law is applicable, and the analogy of the law where no rule is directly applicable. He who would have equity must do equity, and give effect to all equitable rights in the other party respecting the subject-matter of the suit. Equity seeks always to do complete justice; and hence, having the parties before the court rightfully, it will proceed to give full relief to all parties in reference to the subject-matter of the suit." The error assigned is that the charge, while correct as abstract statements of law, was inapplicable to the issues made by the pleadings and the evidence, and tended to confuse the jury. It may be true that the plaintiff was compelled to resort to equity for his remedy only. Nevertheless, it is difficult to see how the charge complained of, which is merely a statement of certain equitable maxims, could confuse the jury or prejudice the plaintiff's case. Especially is this true in view of the fact that the court specifically instructed the jury that the plaintiff was entitled to recover, and furnished a standard by which to measure the plaintiff's damage. We do not hold that the plaintiff can complain of an instruction embodying the general maxims of equity, in virtue of which alone he was enabled to obtain relief. It is sufficient to say that the instructions given, under the facts in this case, will not afford cause for new trial.

2. The second complaint (raised in several grounds of the motion for new trial) is that the court furnished incorrect instructions on the "measure of damages." The plaintiff elected to demand a verdict for damages, alone, and the court instructed the jury that the plaintiff was entitled to recover "the highest proven market value" between the date of the conversion and the date of the trial. The insertion of the word "market" before the word "value" in the charge is said to be erroneous. Section 4514 provides: "In estimating the value of personalty unlawfully detained, the plaintiff may recover the highest amount which he can prove between the time of the conversion and the trial." Our attention has not been called to a case in which the court has

expressly approved an instruction in which the word "value" is qualified by the word "market." Conceivably it would be difficult to apply the qualification in all possible cases. For instance, an article of personal property may not have a market value, in which event it would seem that the cost of production may be inquired into, as in the case of breach of contract. See *Sizer* v. *Melton,* 129 *Ga.* 143 (7,8), 151 (58 S. E. 1055). In this case the plaintiff purchased the property for the purpose of resale. There is some evidence tending to show that it was purchased as junk, and that the purchaser intended to resell the machinery as junk. The defendant in this case also purchased the property for resale. Neither the plaintiff nor the defendant desired the property for any other purpose. All the evidence in the record refers to market value. There is not a suggestion that the property could not be sold for its full value. The entire evidence on the question of value relates to market value. If in any given case the charge may be said to be erroneous, it is certainly not inapplicable or inaccurate in this case.

3. The third assignment of error is that the verdict is without evidence to support it. It is insisted that the allegations made by Shartle Bros. in the trover suit against Pynetree Co. constitute admissions in judicio, and that the verdict for less than $5,000, the value placed upon the property by Shartle Bros. in the trover suit, is unauthorized by the evidence. We do not think that the allegation made by Shartle Bros. in the suit against Pynetree Co. can be held to be conclusive upon Shartle Bros. in this case. Between Pynetree Co. and Shartle Bros. the allegation was an admission in judicio. The plaintiff in this suit was not made a party to the trover suit. In *Harris* v. *Amoskeag Lumber Co.,* 101 *Ga.* 641 (29 S. E. 302), it was ruled: "Admissions of matters of fact in pleadings operate as estoppels only as between the parties to the cause in which they are made, and their privies." We think it a sound principle that an admission in a pleading is conclusive only between the parties and their privies and for all the purposes regarding the issue arising from that particular pleading, unless acted upon so as to work an estoppel. In the present case Shartle Bros. did not in their answer admit the value of the machinery to be $5,000 or any other stated sum. The answer is presumably responsive to the petition. With respect to the plaintiff in this equi-

table suit, the allegations in the trover suit — the prosecution of which was enjoined — stand on the same basis as extrajudicial admissions.

4. Is there any evidence to authorize the verdict of $4250? It appears that the plaintiff in this suit purchased the property about a year before the sale to the defendant in this action, for $3500. The plaintiff himself sold the property to the defendant for $4250. A term of the contract obligated the plaintiff at his expense to place the property on board cars. The evidence indicates that this cost was considerable. The plaintiff was relieved of this obligation under the contract; the property was loaded by and at the expense of the defendant. The effect of the verdict is to charge the defendant with the original contract price plus the cost of loading the machinery. The president of the defendant company testified that junk had not advanced in price, but on the contrary had declined, since the date of the purchase of the machinery. He further testified that he was experienced in his line of business, that he had not been able to sell the machinery at a fair price, that the machinery was still in his possession, that he was ready to sell it at a profit, and that he could not do so. He indicated that by "profit" he meant fifteen per cent. upon the cost of the article. He also testified that in 1915 he sold a similar machine, but in good condition, for $9,000; that on the date of the purchase and since to the date of the trial such a machine was worth fifty per cent. more than in 1915, or $13,500; "that in my opinion is the maximum value of a machine of the kind in question after it is overhauled and offered for sale." He estimated that it would cost $10,000 to place the machine in condition; $5,000 to place it on board cars and deliver it in his yards, and $5,000 for the actual repairs. From this evidence it is deducible that in the opinion of the witness the machine was actually worth $3,500. His testimony is positive that at the time he purchased the machine it was not worth more than $4250. It is true that several witnesses testified that the value of this machinery was greatly in excess of $4250. The opinion of these witnesses was in each instance based upon the value of the machine after it had been overhauled. That it would cost approximately $10,000 to overhaul the machinery seems to be conceded; but allowing $10,000 for this purpose, the evidence for the plaintiff would have authorized a

verdict greatly in excess of $4250. From what we have said above the verdict is not, however, without evidence to support it.

*Judgment affirmed. All the Justices concur.*