MURRAY COUNTY *v.* PICKERING.

No. 14921.  SEPTEMBER 8, 1944.  REHEARING DENIED OCTOBER 7, 1944.

*Wright, Willingham & Fullbright* and *Jesse M. Sellers,* for plaintiff.

*C. N. King, D. W. Mitchell, R. Carter Pittman,* and *W. B. Robinson,* for defendant.

ATKINSON, Justice. (After stating the foregoing facts.) ■ The county sought to establish that this road construction was done under the terms of a verbal contract, which later was reduced to a written memorandum; that, under the terms of the contract, Pick-

ering was an agent of the county and should account to it for such funds as he received to apply upon the project, less such amounts as were legally expended thereon; and that, as compensation, he was to be paid a "reasonable sum for his services provided there is a sufficient fund left to pay same." Pickering claimed that no such verbal contract ever existed, but that the work was done under the terms of a written contract, dated May 4, 1931, by the conditions of which he became an independent contractor, and consequently not obligated or required to account to the county as a trustee.

The present county commissioner of Murray County, who was not in office during the period when the road was under construction, but at whose instance the present suit was instituted, produced evidence in substance as follows: Murray and Gilmer Counties had a contract with the State Highway Department for the construction of a highway between Chatsworth and Ellijay. Pickering took charge of the work, and received and disbursed the funds obtained from the Highway Department. While the work was in progress, by reason of certain local dissatisfaction, the Governor had the State Auditor to investigate and audit the project. When the auditor called upon Pickering for a copy of the contract under which he was operating, he furnished them a copy of the verbal contract, which had been reduced to a written memorandum, and which made him an agent of the county. This memorandum of the verbal agreement was not dated, but had been entered into "about May 26, 1931," and had been reduced to writing "on or about May 31, 1933," at the request of the State Auditor.

The county produced evidence that on March 13, 1934, J. Roy McGinty Jr., as a citizen and taxpayer, filed a suit against Pickering and others, seeking among other things to enjoin Pickering from paying out money received from the Highway Department upon the contract of the Highway Department with Murray and Gilmer Counties. *McGinty* v. *Pickering,* 180 *Ga.* 447 (179 S. E. 358). In the third paragraph of the petition of McGinty, it was alleged that the contract between the counties and Pickering was the verbal contract which had been reduced to a written memorandum, and the entire contract was there set forth. In the answer of Pickering to this paragraph of the suit, it was stated: "This defendant admits that the statement therein contained, referred

to in the petition as a contract, is a substantial copy of a statement reduced to writing by him from his recollection of the status out of which grew the employment of himself by J. W. Harris, sole commissioner of Murray County, in connection with said road project and which is at most merely making him the agent of the county in the performance of the duties therein assigned."

The county also introduced in evidence a proceeding instituted by the income-tax division of the United States Treasury Department, wherein Pickering filed a sworn petition, stating: "The said counties of Gilmer and Murray, political subdivisions of Georgia, entered into an agreement with the petitioner herein to act as the agent of the two counties and to supervise the construction of said highway;" and further alleged therein, that he "continued exclusively in the employ of said counties, acting as their employee and agent." To this petition was attached a copy of the contract, but the copy was not the verbal contract which had been reduced to a written memorandum, but was a copy of the written contract of May 4, 1931. The county sought to establish that the verbal contract entered into in May, 1931, though not reduced to a written memorandum until May, 1933, was the only contract ever made between the two counties and Pickering; and that the written contract under which Pickering claimed performance of the work was never in existence until after Pickering ceased work on the project, and it was then brought forth and placed upon the minutes of the commissioners in order that Pickering might reap the profits, being the difference between the amount received from the Highway Department and the amount expended on the project, rather than a payment of reasonable compensation for his services as an agent of the county. The evidence to establish that the work was done under the verbal contract was primarily based upon the admissions of Pickering to the State Auditor, upon the pleadings in the *McGinty* v. *Pickering* suit, and upon the petition to the United States Treasury Department, above set forth.

In seeking to establish the fact that the work was done under the verbal contract, the county produced evidence that no reference to the written contract, which the county claimed was merely an afterthought and a fraud, ever appeared upon the minutes of the county commissioners until it was referred to for the first time under minutes of a meeting dated May 5, 1934, wherein it appears

that a complete settlement was had between Pickering and the county. In the minutes setting forth this settlement, no copy of this written contract was attached, but the minutes recite the terms of the contract similar to the contents of the written agreement. These minutes of the meeting of May 5, 1934, were entered in a space between the meetings of February 5, 1935, and March 5, 1935. Subsequently, however, on June 4, 1935, there appears, on the minutes of the commissioners of Murray County, minutes of a meeting in which the minutes of May 5, 1934, were reiterated and ratified, a copy of the written contract was set forth, a recitation that all the terms of the written contract had been complied with by both contracting parties, and a further recitation that there was some question as to the validity of the settlement made on May 5, 1934, by reason of a copy of the written contract not being attached to the minutes. These minutes also set forth an exchange of checks between Pickering and Murray County covering the entire amount received by Pickering. It was testified that this was done in order to relieve the Cohutta Banking Company of any liability by reason of Pickering checking on the account in which the funds from the Highway Department for the construction of the road had been deposited.

Pickering produced evidence that the work was done under the written contract of May 4, 1931, which was a contract between himself and both Murray and Gilmer Counties; that though the contract was not entered on the minutes of the commissioner of Murray County until May 5, 1934, it was entered on the minutes of the commissioner of Gilmer County at the time of its execution; that there never was any such thing as a verbal contract between himself and the two counties; and he explained the existence of the verbal contract which was subsequently reduced to a written memorandum. His explanation was that, after entering into the written contract, he found he was not looked upon with favor by the State administration; and when the auditors, sent by the State to make an audit of the project, asked him what the terms of his contract were, he prepared or had prepared the written memorandum of the alleged verbal contract, had it signed by the commissioners of Murray and Gilmer Counties, and signed it himself, with the view of keeping the exact terms of the original written contract from becoming known to the State administration. As

to the admissions made in the pleading in *McGinty* v. *Pickering,* he testified that there was no substantial or material difference between his statements there made and the terms of the written contract. He explained the admissions in the petition filed with the United States Treasury Department by stating that he did not understand the tax proceeding, and the petition was prepared by his attorney.

The commissioner of Gilmer County who was serving on May 4, 1931, the date of the written contract, and his son, who is now chairman of the board of commissioners of Gilmer County, both testified that the written contract was signed on the date indicated, and was placed upon the minutes of the county commissioners of Gilmer County on the next day. Others testified that they saw the contract prior to May 4, 1931, while blank and unsigned. J. W. Harris, the commissioner of Murray County, who signed the contract for that county, and who also signed the written memorandum of the verbal contract, died on September 16, 1934. At the time J. W. Harris signed the memorandum of the verbal agreement, he was not the sole commissioner of Murray County, there being two other commissioners at that time. (In 1931 the law provided for one commissioner; and in 1933, by amendment, it was changed to three commissioners; but in 1939 it was changed back to one commissioner.) The memorandum of the verbal agreement was never placed upon the minutes of the county commissioners of Murray County. The sole commissioner of Gilmer County, J. S. Hudson, who signed the written contract of May 4, 1931, and also the written memorandum of the verbal contract, in explaining the reason for signing the latter, stated that the State administration had notified him they did not like Pickering, and as he wanted the road completed, when the State auditors came there he knew they were trying to find some flaw and have an excuse to stop the construction. The auditors wanted some kind of a paper to show that there was an existing contract, and he understood the two writings to mean about the same thing.

A. L. Keith, who was one of the commissioners elected in 1933 as a member of a three-man board, and who served at the time of the final settlement with Pickering on May 5, 1934, testified, that shortly after he went into office he learned of the written contract, instructed Pickering to proceed thereunder, and that the

final settlement was made and approved by the board of commissioners. All of the expenditures made on the project were verified and approved. Substantially the same evidence was given by the other commissioner, Luke Shields.

Under the pleadings, the right of the county to a recovery was based upon the verbal contract. This contract having been subsequently reduced to a written memorandum, was introduced in evidence; and to establish that the work was performed thereunder, the county relied largely upon the admissions made by Pickering to the State auditor, the pleadings in the *McGinty* v. *Pickering* suit, and the petition of Pickering filed with the United States department of revenue. While all of the foregoing were properly considered as admissions, they were not such admissions as amounted to an estoppel. Estoppels by admissions made in pleading apply only between parties and privies to the suit or litigation in which the admissions relied on as an estoppel were made. Code, § 38-114; *Wilkinson* v. *Thigpen,* 71 *Ga.* 497 (3) ; *Harris* v. *Amoskeag Lumber Co.,* 101 *Ga.* 641 (29 S. E. 302) ; *Owen* v. *Palmour,* 111 *Ga.* 885 (2) (36 S. E. 969) ; *Koplin* v. *Shartle Bros. Machine Co.,* 150 *Ga.* 509 (3) (104 S. E. 217).

There was evidence tending to establish that the work was performed under the terms of the verbal contract, but Pickering submitted evidence to controvert this, and to prove that the work was not done under this contract, but under the terms of the written contract of May 4, 1931. This was a question of fact to be determined by the auditor. Where exceptions of fact to an auditor's report are filed, the burden is upon the plaintiff in error to show to the satisfaction of the Supreme Court that the finding of the auditor is unsupported by evidence, the presumption being that the finding is correct; and where in an equity case it does not distinctly appear that the finding is unsupported, the judgment refusing to approve the exceptions of fact will be affirmed. *Crim* v. *Alston,* 169 *Ga.* 852 (3) (151 S. E. 807), and cit.

There was ample evidence to support the findings of fact by the auditor, and the trial judge did not err in overruling all exceptions of fact to the auditor's report, or in declining to submit the same to a jury.

■ The nineteen exceptions to findings of law by the auditor, some of which are subdivided and cover more than one ruling, need

not be specifically set forth in this opinion. From a close and careful examination of each exception, we do not find, in any instance, any harmful findings of law.

The plaintiff's right to a recovery was based upon the establishment of the verbal contract, and the extent of recovery thereunder would have been the difference between the amount of money and property which the county turned over to Pickering, less such legitimate expenditures Pickering incurred on the project and less reasonable compensation for his services. None of the findings of law by the auditor in any way curtailed the right of the county to establish its suit, nor gave to Pickering any right to which he was not legally entitled. Accordingly, there is no merit in the exceptions to the findings of law.

In view of the rulings heretofore made, the trial judge did not err in rendering a decree in favor of the defendant in error.

*Judgment affirmed. All the Justices concur.*