## FRANK & COMPANY *v.* NATHAN.

1. Before a party can have the equitable relief in the nature of reformation of a written contract on the ground that it omitted certain material matters which had been agreed upon orally between the parties, he should show that the oral agreement was made before the writing was signed; and it is not sufficient, in a petition seeking reformation, merely to allege that on or about the day on which the writing was signed the parties had a conversation in reference to the subject-matter of the contract, and that in said conversation it was agreed between the parties that the contract as signed was to have such and such an effect. Construing this allegation most strongly against the pleader, it fails to show that the oral agreement was anterior to the writing embodying the same.

2. Where one party executes a guaranty making himself liable for the future debts, not in excess of a stated amount, of a third party who is already indebted to a mercantile firm in whose favor the guaranty is executed, and it is further stipulated in the guaranty that it "shall be cancelled and surrendered [to the guarantor] whenever [the debtor] shall have paid to [the party in whose favor the guaranty is executed] the indebtedness which he now owes to them," upon the acceptance by the creditor firm of a certain per cent. of the indebtedness due it at the time of the execution of the writing, in full settlement and satisfaction of the indebtedness due at the time of the execution of the paper, the guarantor will be entitled to have the guaranty surrendered and delivered to him.

No. 4400. OCTOBER 21, 1924.

Equitable petition. Before Judge Summerall. Wayne superior court. April 28, 1924.

To the November term, 1923, of Wayne superior court, Frank & Co., hereinafter referred to as plaintiffs, brought their petition in equity against the defendant in error, I. Nathan, for the dual purpose of reforming a contract of guaranty and recovering judgment upon such reformed guaranty. It is alleged in the petition: That the plaintiffs are wholesale merchants doing business in Savannah, Georgia, and prior to September 16, 1921, had been selling merchandise to M. Marcus, then conducting a retail busi-

ness at Reidsville, Georgia. Marcus, on August 10, 1921, suffered a loss by fire which destroyed his entire stock of merchandise and fixtures. At that time Marcus was indebted to plaintiffs in the sum of $5,700. That, pending the adjustment of his fire loss, Marcus desired to re-embark in business, selecting a new location at Fitzgerald, Georgia, and applied to plaintiffs for additional line of credit to the extent of $2500. That "thereupon your petitioners informed the said Marcus that, in view of the amount he then owed your petitioners, they would not extend him any further credit unless he would obtain some person satisfactory to your petitioners to become guarantor for the payment of such new merchandise, such guaranty, if obtained, to be surrendered and cancelled when the said Marcus shall have paid the indebtedness then already owing to your petitioners. That shortly thereafter the said defendant offered to your petitioners to become guarantor to them for such new indebtedness, not exceeding $2500.00, as might be created through the sale by your petitioners to the said M. Marcus of merchandise to be shipped to him for his Fitzgerald, Georgia, business. That your petitioners, using a form of guaranty which is in common use by them, prepared a written guaranty and forwarded the same to the defendant at Jesup, Georgia, and which guaranty the said defendant executed on the 16th day of September, 1921, and delivered to your petitioners. Your petitioners attach hereto as part hereof a copy of said guaranty, marked 'Exhibit A.' That on or about the date when said guaranty was executed by the said defendant he talked with E. M. Frank, one of your petitioners, and who had charge of this matter for his firm, the said conversation being over telephone, the defendant then being in Jesup and the said E. M. Frank then being in his office at Savannah; and in said conversation it was agreed between the defendant and your petitioner that the defendant's guaranty was to cover only new purchases to the extent of not exceeding $2500.00, and with the further understanding that, when the said M. Marcus should pay the indebtedness which he was then owing to your petitioners, the guaranty would be surrendered to the defendant." Exhibit A, referred to above, is as follows:

"State of Georgia, Wayne County. For and in consideration of the sum of one dollar to me in hand paid by Frank & Company, a copartnership, of Savannah, Georgia, the receipt of which is hereby

acknowledged, I, I. Nathan, of Jesup, Wayne County, Georgia, do hereby guarantee unto said Frank & Company the full and prompt payment to them, at maturity, of any and all amounts, not in excess of twenty-five hundred ($2500.00) dollars, which may be now or hereafter become due and owing to them by M. Marcus, of Reidsville, Tattnall County, Georgia, for goods, wares, and merchandise which said Frank & Company may have sold or may sell and deliver unto said M. Marcus, from time to time. Nothing herein contained shall limit the amount of credit extended by said Frank & Company to said M. Marcus; but as guarantor I shall be liable for only twenty-five hundred ($2500.00) dollars. This guaranty shall be continuous in its character, and remain effective and binding upon me until I shall cancel or revoke the same and notice thereof in writing actually received by said Frank & Company. I hereby waive notice of the acceptance of this guaranty, and of the sale and shipment of any merchandise to said M. Marcus, and of any and all defaults which may occur, and agree to pay the amount for which I may be liable hereunder unto said Frank & Company upon demand after any default, and should there be two or more items maturing at different dates, each item shall constitute a separate default when not paid at maturity and to be paid by me under this guaranty without requiring said Frank & Company to await the maturity of all the items. Should I fail to make payment within five (5) days after demand upon me, said Frank & Company shall be at liberty to proceed against me to enforce payment, without being required to first exhaust their remedies against or the assets of said M. Marcus, and without proceeding against the latter either prior to or concurrently with any action against me. In witness whereof, I have hereunto set my hand and seal, this 16th day of September, 1921." Executed by I. Nathan in the presence of a notary public. -

It is further alleged: In using the regular form as aforesaid, the guaranty as signed by the defendant was made, by mutual mistake, to cover not only the indebtedness which might be created through future purchases by Marcus, as was the understanding and agreement between plaintiffs and defendant, but also covered any and all indebtedness, not in excess of $2500, "which may be now due and owing to plaintiffs by the said Marcus." It was neither intended nor contemplated by the defendant or plaintiffs that there

should be any liability on the part of the defendant under his guaranty for any part of the indebtedness owing by Marcus growing out of his purchases prior to the fire, but such guaranty was expressly understood, agreed, and limited to responsibility for indebtedness created after the date of said guaranty for merchandise to be shipped to Marcus at Fitzgerald, Georgia. While the defendant actually executed the guaranty prepared by plaintiffs, the contract thus executed did not express the terms of the guaranty as agreed upon; the variance occurred by mistake; the mistake consisted in making the terms of the contract as executed security for the existing indebtedness as well as future indebtedness, whereas in fact, under the agreement between the parties, the defendant's liability was limited to cover only new purchases for the Fitzgerald business, and the mistake in making the contract of guaranty to cover also existing indebtedness was due to the fact that plaintiffs in preparing the guaranty inadvertently followed in its entirety the usual form of guaranty adopted by them, and that the defendant inadvertently executed such contract as written without striking out the words which made his liability exceed the actual agreement between them, and such mistake was mutual. The plaintiffs, relying upon the guaranty as understood and agreed upon between them and defendant, sold and delivered to Marcus certain merchandise shipped to him at Fitzgerald, Georgia; and there is still owing to plaintiffs, as a result of those transactions, a balance of principal in the sum of nineteen hundred and eighty-three dollars. Of the indebtedness of $5700 owing to plaintiffs at the time when the guaranty was executed, they received $3705 about December 30, 1921. That sum, being 65 per cent. of the old indebtedness, was accepted by plaintiffs in full compromise settlement and satisfaction of the old indebtedness, in accordance with a general compromise agreement reached between Marcus and all of his merchandise creditors whose indebtedness arose out of the business previously conducted at Reidsville. This settlement was agreed upon because the creditors realized that by no other method of liquidation could they receive as much. Among that class of creditors was the copartnership of I. Nathan & Son, then doing business in Savannah, composed of the defendant and his son, Joseph Nathan, and said copartnership accepted said settlement of 65 per cent., and the defendant knew of and acquiesced in such compromise

settlement.   Marcus has never paid any part of the $1983 owing by him for the Fitzgerald purchases, all of which sum has matured and as to which Marcus has defaulted, and all of which, besides interest, is due and owing to plaintiffs by the defendant by virtue of his guaranty, for the reformation of which this proceeding is brought.   The plaintiffs made demand upon the defendant for payment of said sum, said demand having been made more than five days prior to April 9, 1923, on which date the defendant denied liability and refused payment.

The prayers of the petition were : that the mistake in the guaranty as executed be corrected by striking therefrom certain words so as to make the guaranty cover only the new indebtedness for the Fitzgerald business, and by adding a paragraph to include in said guaranty the other agreement as to the cancellation and surrender of the guaranty whenever Marcus shall have paid to plaintiffs the indebtedness growing out of the Reidsville business; that the corrected guaranty be made to conform to the actual agreement between the parties and be decreed to be the true and correct writing evidencing and containing the agreement; and that judgment be entered upon such reformed and corrected guaranty for the principal and interest due.   The defendant filed a general demurrer on the following among other grounds :   that the petition taken in its entirety fails to state a cause of action, and does not authorize a recovery in favor of the plaintiffs; that the allegations in the petition are insufficient to authorize a reformation of the contract; and that the allegations demand a finding in favor of the defendant. The court sustained the demurrer, and the plaintiffs excepted.

*Jacob Gazan,* for plaintiffs.

*W. B. Gibbs, J. H. Thomas,* and *Raymond Pierce,* for defendant.

BECK, P. J.   (After stating the foregoing facts.)

1.   We are of the opinion that the court properly sustained the general demurrer to the petition in this case.   We have set forth at some length, in the statement of facts, the allegations made in the petition as to the contention of petitioners in regard to what they insist was the actual agreement or contract contained in the guaranty.   An examination of those allegations will show that there is no distinct allegation of an agreement or contract entered into before the guaranty was signed.   The doctrine that the allegations shall be most strongly construed against the pleader has a real

meaning, and is to be given effect in cases like the present one. If an agreement was actually made as to the terms of the guaranty before the same was signed, it could have been alleged, but the pleader contents himself with alleging that "shortly thereafter [that is, after they had informed Marcus that they would not extend him any further credit unless he should procure some one to become guarantor for him], the defendant offered to petitioners to become guarantor to them for such new indebtedness," etc. The expression "shortly thereafter" might well cover the time subsequent to the actual signing of the guaranty, which was signed by the defendant and delivered to the plaintiffs. And it is equally clear that the allegation in the petition, that "on or about the date that the said guaranty was executed by the said defendant, he talked with E. M. Frank, one of your petitioners, who had charge of this matter,  .  . and in said conversation it was agreed between the defendant and petitioner that the defendant's guaranty was to cover only new purchases," etc., might as well have been after the signing of the guaranty as before. It is argued that the expression, "was to cover," necessarily related to the future; but the full expression is, "it was agreed between the defendant and your petitioner that the defendant's guaranty was to cover only new purchases," etc., and that agreement might refer to their construction of the guaranty, or might be putting additional terms to the same. At any rate, it is not plain that this conversation and agreement took place before the signing of the guaranty, and it is not a necessary inference that it took place before the signing of the guaranty; and we do not feel authorized to make inferences in favor of the pleader. We do not think, therefore, in the absence of distinct and definite allegations that an agreement or contract had been made before the signing of the guaranty, that a court of equity would be authorized to reform the instrument so as to include terms which it is not shown were in the original agreement or intended to be in it, or which it was the intention of the parties to insert in the agreement expressed or manifested before the agreement was signed. Where it clearly appears that the contract does not show the intention of both parties, a court of equity may reform the contract to conform to their intentions. It is well settled that a written contract which misstates the terms of an oral agreement on which it is founded may be reformed. *Niagara Fire Ins. Co.* v. *Jordan,* 134 *Ga.*

667 (68 S. E. 611, 20 Ann. Cas. 363). "In all cases of mistake of fact material to the contract, or other matter affected by it, if the party complaining applies within a reasonable time, equity will relieve." Civil Code, § 4580. But a bill of complaint in a suit to reform a written instrument must clearly and distinctly state what was the contract or agreement between the parties, and show what part of the contract was omitted when it was reduced to writing, or what portion of the contract as it was expressed in the writing was not embraced in the original contract. "If mistake is relied on, it must be distinctly charged and stated with precision, the particular mistake being shown and how it occurred. In other words, the pleader should state why the terms of the actual contract happened to be left out, or how terms not agreed on came to be inserted." 23 R. C. L. 361. It seems clear that before the petitioner could avail himself of the allegation that material words of an oral agreement or contract were omitted from a written contract, he should show that the oral agreement was made before the writing was signed; and this he fails to do. And it follows from what we have said above, that the court did not err in dismissing the petition upon the ground taken in the demurrer, that the petition did not set out a cause of action for reform.

2. Moreover, we are of the opinion that if the written guaranty had been reformed so as to speak the contract as the plaintiffs insist it was and should have been written, the plaintiffs would not have been entitled to recover a judgment for any amount. In the guaranty which the plaintiffs seek to have the court by its decree to establish as the true contract between the parties, is the following: "and it is hereby agreed that this guaranty shall be cancelled and surrendered to me whenever M. Marcus shall have paid to Frank & Co. the indebtedness which he now owes to them growing out of the business conducted by him at Reidsville, Georgia." That indebtedness, as appears from the petition, was the sum of $5700, and subsequently to the signing of the guaranty the plaintiffs received $3705.00, which amount was paid prior to the bringing of this suit and after the execution of the guaranty. This last sum was 65 per cent. of the old indebtedness, and "was accepted by plaintiffs in full compromise settlement and satisfaction of the old indebtedness, in accordance with a general compromise agreement reached between Marcus and all of his creditors whose in-

debtedness arose out of the business previously conducted at Reidsville." It is also alleged that among the class of creditors referred to was the copartnership of I. Nathan & Son, composed of the defendant in this case and his son, and this copartnership accepted a settlement of 65 per cent.; and thereupon it is alleged that the defendant knew of and acquiesced in such compromise settlement. And we are of the opinion that when the plaintiffs in this case accepted 65 per cent. of the indebtedness of Marcus in full and complete satisfaction of their claim, that debt was paid and discharged in the sense in which the word "paid" is used in the guaranty which plaintiffs insist was the true contract between them and the defendant. We do not think that the facts alleged show that Nathan acquiesced in the settlement between Frank & Co. and M. Marcus in such a manner that the settlement and compromise would not amount to a complete satisfaction of the debt. The allegation of acquiescence on the part of Nathan in the compromise settlement between Frank & Company and Marcus is based upon the fact that Nathan's firm accepted 65 per cent. of its claim, the same per cent. that was paid Frank & Company, in settlement of the former's claim. "As a general rule the payment or other satisfaction or extinguishment of the principal debt or obligation by the principal or by any one for him discharges the guarantor." 28 C. J. 1003, § 164, and cases cited. See also *Brown* v. *Ayer,* 24 *Ga.* 288; *Tarver* v. *Rankin,* 3 *Ga.* 210.

We are, consequently, of the opinion that the court did not err in sustaining the other ground of the general demurrer, wherein it is insisted that even if a reformation should be had establishing the written guaranty which the plaintiffs insist contains the true agreement between the parties, they would not be entitled to a judgment against the defendant.

*Judgment affirmed. All the Justices concur.*