CRIM *v.* ALSTON.

No. 7211.   FEBRUARY 11, 1930.

*R. S. Wimberly,* for plaintiff.

*G. Y. Harrell* and *W. W. Dykes,* for defendant.

RUSSELL, C. J.   On December 6, 1923, N. C. Alston executed to Mrs. F. A. Crim a deed conveying certain described lands in Stewart County, Georgia.   Part of the description reads as follows: "all of the above land lying east of the run of Big Slaughter Creek, except 125 acres, more or less, being parts of lots 7 and 41 of the 32nd district."   Within a comparatively short time after the delivery of this deed the husband of the plaintiff discovered that the land partly described in the deed lay west of the run of Big Slaughter Creek instead of east, and asked Alston to change the deed in that respect.   Crim had his attorney write an endorsement on the deed, dated December 6, 1923, "that the word east in the phrase, lying east of the run of Big Slaughter Creek, is an error, and should be west."   Alston declined to sign this endorsement, stating that he would prefer to execute a deed of correction; and accordingly on January 14, 1924, Alston executed to the plaintiff a deed purporting to correct the incorrect description in the former deed and in which he did change the phrase "lying east of the run of Big Slaughter Creek" to "lying west of the run of Big Slaughter Creek," but in the latter deed he omitted to include certain lots and parts of lots of land which were included in the deed of December 6, 1923.   The plaintiff, however, accepted the deed of January 14, 1924, and had it duly recorded.   The consideration of the deeds to the land conveyed by Alston to Mrs. Crim was the execution by Crim to Alston of a deed conveying nine houses and lots in the City of Atlanta.   In other words, the transaction was one in which no money passed, being merely an exchange of farming lands in Stewart County for the property in the City of Atlanta.   The land conveyed by Alston to Mrs. Crim was unencumbered.   The city property conveyed by Crim to Alston was encumbered by loans aggregating nearly $30,000.   On March 29,

854

1927, the plaintiff filed the present suit, seeking to recover, upon an alleged breach of warranty, the value of timber which she charged had been cut from the land because of a previous sale of the timber to other parties, as well as to recover the value of lands described in the deed which the plaintiff alleged had not been delivered and could not be delivered to her by Alston, as he had never owned the lands. By amendment the plaintiff struck all allegations seeking recovery of damages for the cutting and sale of timber. The petition also alleged that there was a mistake in the description of the property, and prayed that the deed be reformed. In answering the suit, and also by an amendment filed on April 16, 1928, Alston admitted there was an error in the description of the property as written in the deeds; and by cross-bill he prayed for an order reforming the deeds so as to make the description speak the truth. The right to reformation was based on the fact that there was a mutual mistake on the part of both parties, as well as a mistake on the part of the scrivener in copying the deed. The defense of Alston was that he did not really sell anything but what was known as the Jordan place, and that certain lots, 8, 41, and 145, were included in the terms of description by mistake of the scrivener in copying from a deed executed by Charles M. Reynolds to Alston. The case was referred to Judge W. M. Harper, of the city court of Americus, as auditor. He found in favor of the defendant. The plaintiff filed exceptions to the auditor's report. These exceptions were overruled, and judgment and decree were entered in accordance with the findings of the auditor. The plaintiff excepted.

It is the contention of the plaintiff that "there are two reasons why the defendant should not have reformation, that are so clear, convincing, and inescapable, and which therefore absolutely require a reversal, that we shall discuss in this brief only those two questions, with perhaps a short reference to one or two others. These are the two questions: The defendant is not entitled to reformation on the ground of mutual mistake (on which he seeks it), (1) because the evidence fails to show that the parties had previously agreed on any other contract—any contract other than that expressed in the deed which defendant says should be reformed; and (2) because the evidence does not show that the mistake was the result of defendant's own gross negligence, and this alone, if any

mistake was made." After a very careful review of the evidence, we can not hold that either conclusion reached by counsel for plaintiff is deducible from the evidence as a whole. On the contrary, we find that while there is much conflict in the testimony of the witnesses, and that the auditor might have been authorized to find that the mistake upon which reformation is sought was not a mutual mistake, still the auditor was fully authorized by the evidence to find that the defendant was entitled to the reformation prayed in his cross-bill. We bear in mind the principle that "before equity will reform a written instrument, it must appear that there was a valid agreement sufficiently expressing the real intent of the parties, and that the written instrument failed to express such intent, and that this failure was due to mutual mistake." 34 Cyc. 915. In other words, to effect a reformation of a writing "it must clearly and satisfactorily appear that the precise terms of the contract had been orally agreed upon, and that the writing afterwards signed failed to .be, as it was intended, an execution of such previous agreement, but, on the contrary, expresses a different contract." 2 Pomeroy's Equitable Remedies, 675, § 1139. It must be borne in mind also that both plaintiff and defendant sought reformation. The case is in that respect somewhat unique. Both parties established the fact that there was a definite agreement as to the subject-matter of the exchange of lands. The plaintiff was absolutely positive as to the land that she was to receive in Stewart County in exchange for the houses and lots in Atlanta. The only difference between the parties was that the defendant as positively denied the agreement to include in the bargain all of the lots of land in Stewart County which the plaintiff said the defendant promised him in exchange for the city property; and regardless of this, as the burden devolved upon the plaintiff to establish her case, it would naturally follow that if the auditor gave the preference in credibility to the testimony of the defendant rather than to that in behalf of the plaintiff, the result would be a finding for the defendant. This would be especially true as to the shortage of land included in the deed from Alston to Mrs. Crim, which resulted from including land that Alston had never owned but which had long been in possession of others. In the absence of some circumstance indicating a criminal intention, there is a presumption that men ordinarily act honestly. Moreover, if Alston had had

so little caution as to sell the land occupied by his neighbors, he could well have expected the fraud to be soon discovered; and the deed which the plaintiff seeks to reform, executed January 14, 1924, was made after Crim had had the opportunity for more than a month from December 6, 1923, to fully investigate; and having had this opportunity, he could have declined to accept the deed of January 14.

As to the contention of the plaintiff that the mistake was the result solely of the gross and culpable negligence of the defendant against which equity will not relieve, it suffices to say that in the reference of a cause in equity to an auditor the auditor takes the place of a jury, and the existence or non-existence of negligence and the degree of negligence, whether slight or gross, is purely a jury question. Furthermore, upon review the report of the auditor is to be taken as prima facie correct, and the burden of overcoming it rests upon the party making the exception. *Adair* v. *St. Amand,* 136 *Ga.* 1 (3) (70 S. E. 578). The true rule as to negligence as it may affect one's right to relief in equity is stated in the Code of 1910, § 4571: "The negligence of the complaining party, preventing relief in equity, is that want of reasonable prudence the absence of which would be a violation of legal duty. Relief may be granted even in cases of negligence by the complainant, if it appears that the other party has not been prejudiced thereby." The evidence in this case strongly supports the inference that the plaintiff (as to whose property there is evidence, not contradicted, that the city property does not exceed in value the amount of the loans placed upon it) has not suffered substantial loss by failing to secure the lands which she claimed to have been sold to her.

The auditor had before him two plats, one introduced in behalf of the plaintiff and the other in behalf of the defendant, which gave the location of every lot mentioned in the deeds sought to be reformed and of the Big Slaughter Creek and the Flanigan Sand Branch, and one of them designated by red lines the place which had for a long time been known as the Jordan place. Both maps were made by the same surveyor at different times and at the instance of each of the parties without reference to the other, and there was evidence in behalf of each of the parties setting up plainly an original agreement made at the time that Alston and Mrs. Crim's husband rode an entire afternoon over the Stewart

County land to identify the lands by the land-lot numbers with the aid of the plats. It is true that no lines were examined or corners shown or designated, but the 'evidence is positive and uncontradicted that Big Slaughter Creek was not crossed that afternoon, and the plats show that all of the Jordan place is on the west side of Big Slaughter Creek which intersects lots 7, 8, and 41. Alston swore, "I never did own any parts of lots 7, 8, and 41 east of Big Slaughter Creek; no part of lot 145 except 14 acres on the south side is a part of the Jordan place." Again he testified, "According to that plat and the description in this amendment, I proposed to sell him all that part of lot 41 lying west of Big Slaughter Creek, that's the lot at the top of the hill, and lot number 24, the whole of lot number 9, and that part of lot number 8 lying west of Big Slaughter Creek, and all that part of lot number 7 lying west of Big Slaughter Creek, all in the 32nd district of Stewart County, Georgia; the north one-half of lot 113 and all that part of lot number 144 lying north of Flanigan's Sand Branch in the 24th district of Stewart County, Georgia. That is the land I proposed to trade him for his Atlanta property, and those negotiations led up to a consummation of the trade; that's the land I pointed out to Mr. Crim as being the land we actually agreed upon when we finally reached an agreement to sell it." As to lot 145 the plaintiff contended that it was included in the bargain, but the defendant testified: "I have been in possession of this lot 145 since I made the deed to Mrs. Crim. I never delivered lot number 145 to Mr. Crim. I never delivered to him any part of the Jordan place east of Big Slaughter Creek. I can't deliver him any parts of lots numbers 7 and 41 east of Big Slaughter Creek, because it doesn't belong to me. I will not deliver to him lot 145." It will be borne in mind that the first complaint of the plaintiff's husband was that the land purchased by him was west of Big Slaughter Creek. That was the only error to which he called attention. With that error corrected at his request, he could not fairly claim lot 145. Furthermore, it appears from the testimony of J. H. Woodruff that this lot was not a part of the Jordan place, for he testified: "Lot number 145, except 14 acres on the south side, is the old Dr. Alston place. Dr. Alston owned it at the time of this sale, and has always owned it as far as I know. That was not a part of the Jordan place, and aint never been." Without recapitulating all the evidence, it

is clear that there was sufficient evidence to authorize the reformation prayed by the defendant in his answer and cross-bill; and the judge of the superior court did not err in overruling the exceptions to the auditor's report and making the auditor's findings the judgment of the court.

*Judgment affirmed.* *All the Justices concur.*