21470.   LAWTON *et al.* v. BYCK.

ARGUED JANUARY 8, 1962—DECIDED FEBRUARY 12, 1962—
REHEARING DENIED MARCH 8, 1962.

678

*Ogden Doremus*, for plaintiff in error.

*Sylvan A. Garfunkel*, contra.

MOBLEY, Justice. ■ "The vendor seeking specific performance shall show' an ability to comply substantially with his contract in every part and as to all the property; *but a want of title or other inability as to part shall not be a good answer to the vendee seeking performance, who is willing to accept title to the part, receiving compensation for the other.* If the defects in the vendor's title shall be trifling, or comparatively small, equity shall decree at his instance, granting compensation for such defects." *Code* § 37-806. (Italics ours.)

In paragraph 3 of the option, as set out in the statement of facts, the plaintiffs are excused from performance if they cannot give merchantable title to the property and they are required to return the option money. They allege in Count I of their petition that their purported compliance with paragraph 3 made void the option contract notwithstanding the provisions of the above quoted Code section.

We cannot agree. While they are not able to give a deed conveying merchantable title to all of the land described in the option, they are able to convey merchantable title to a part of the property and therefore do not lack title to that part which Byck is willing to accept. It is clear that *Code* § 37-806 presupposes just such a situation. See *Phinizy v. Guernsey*, 111 Ga. 346 (36 SE 796); *R. C. Cropper Co. v. Middle Georgia*

*Broadcasting Co.*, 212 Ga. 235 (91 SE2d 605); *Chatham Amusement Co., Inc. v. Perry*, 216 Ga. 445 (117 SE2d 320).

The Code Section quoted above is completely controlling here and for that reason the trial court did not err in sustaining the general demurrer to Count I of the petition.

■ Count II of the petition alleged that the letters seeking to exercise the option are not a valid exercise of said option.

We do not agree. Byck, in seeking to exercise the option, made reference to the fact that the plaintiffs owned less land than that described in the option contract but stated that he was electing to exercise the option according to the provisions of *Code* § 37-806, supra. There can be no doubt that this was a valid exercise of the option.

Accordingly, the trial court did not err in sustaining a general demurrer to this count of the petition.

■ Count III alleges that Byck's use of the term "More or less" in drafting the descriptive portion of the option, justifies any deficiency in the amount of land and that no apportionment should be made in the price.

The only authority cited by plaintiff in support of his allegations is *Code* § 29-201, which deals with deficiency in quantity of lands. This Code section has no bearing on the case *sub judice*, as it is clear from the facts alleged, and from the exhibits attached to the petition, that a defect in title, rather than a deficiency in quantity, is involved.

This court in *Washington Mfg. Co. v. Wickersham*, 201 Ga. 635, 640 (40 SE2d 206), said "In the present case there is no complaint that there is any shortage in quantity. Instead the petition asserts that the defendant is unable to convey title to two tracts of land included within the plaintiff's purchase, on account of the title thereto being in another. In such a case the applicable principle is that contained in the *Code*, § 29-202, to wit: 'If the purchaser loses part of the land from defect of title, he may claim either a rescission of the entire contract, or a reduction of the price according to the relative value of the land so lost.'"

In the instant case the tract involved was described by boundaries and it is clear from the allegations of the petition that several acres within those boundaries were owned by

someone other than the plaintiffs. This amounts to a defect in title as contemplated by *Code* § 29-202 rather than a deficiency in quantity as contemplated by *Code* § 29-201. In this connection, see also *Foute v. Elder*, 109 Ga. 713 (35 SE 118), in which it was held that, "A bond for titles to a tract of land, described as being within certain boundaries and measuring a certain number of feet in width and in depth binds the obligor to make title to the entire tract so described; and if he has no title to a portion of it, this is a breach of the bond, although he did not have title to such portion at the time the bond was executed."

In the instant case the plaintiffs, by the option, offered to sell a tract of land within certain well defined boundaries, i. e., a "lot known as C-3 of said subdivision, said lot being irregular in shape, containing 18.15 acres, more or less, which lot as a whole is bounded on the north by a road 20 feet wide and the property of the Atlantic Coast Line Railroad; on the east by Lot B-2 of said subdivision; on the south by President Street Extension, and on the West by property belonging to the Atlantic Coast Line Railroad, less, however, all that part of Lot C-3 which has heretofore been conveyed by the parties of the first part or their predecessors in title to W. S. A. V., Inc. and which now belongs to Julius Kaminsky."

The plaintiffs are unable to deliver this described tract because they do not have title to a part of it. This is a defect in title. The situation would be different if the plaintiffs were able to convey the tract described to the boundaries described and it later appeared that, though they had title to the entire tract, the tract contained less land than described in the option. The latter situation is covered by *Code* § 29-201, the former is not.

Accordingly, it was not error for the trial judge to sustain the general demurrer to Count III of the petition.

■ "Mutual mistake, in relation to reformation, means a mistake shared by, or participated in by, both parties, or a mistake common to both parties, or reciprocal to both parties; both must have labored under the same misconception in respect of the terms and conditions of a written instrument, intending at the time of the execution of the instrument to say one thing

and by mistake expressing another, so that the instrument as written does not express the contract or intent of either of the parties." 76 C. J. S. 364, 365, Reformation of Instruments, § 28. "A mutual mistake is one in which both parties participate by each laboring under the same misconception." 30 C. J. S. 373, Equity, § 45.

This court in *Crim v. Alston*, 169 Ga. 852 (151 SE 807) restated the principle that " 'before equity will reform a written instrument, it must appear that there was a valid agreement sufficiently expressing the real intent of the parties, and that the written instrument failed to express such intent, and that this failure was due to mutual mistake.' 34 Cyc. 915."

"A bill of complaint in a suit to reform a written instrument must clearly and distinctly state what was the contract or agreement between the parties, and show what part of the contract was omitted when it was reduced to writing, or what portion of the contract as it was expressed in the writing was not embraced in the original contract. 'If mistake is relied on, it must be distinctly charged and stated with precision, the particular mistake being shown and how it occurred. In other words, the pleader should state why the terms of the actual contract happened to be left out, or how terms not agreed on came to be inserted.' 23 R. C. L. 361." *Frank & Co. v. Nathan*, 159 Ga. 202, 208 (125 SE 66); *Martin v. Turner*, 166 Ga. 293 (143 SE 239); *Brooks v. Northwestern Mutual Life Ins. Co.*, 193 Ga. 522 (18 SE2d 860); *Wheeler v. Poole*, 204 Ga. 477 (50 SE2d 326).

Plaintiffs in the instant case do not allege mutual mistake but allege instead two unilateral mistakes. They allege "that the defendant did not know that petitioners did not have title to a portion of Tract C-3 and that petitioners did not know that defendant bargained for other land than that described in 'Exhibit A' [the agency contract] as communicated by petitioners to the said agent T. R. Cooper." These allegations negate mutual mistake, as they show that there was no actual agreement, the terms of which were left out of the written instrument. It is clear from the allegations and the exhibits attached to the petition that the writing represented the contract as the defendant intended it to be and, as stated in *Quiggle v. Vining*, 125 Ga. 98, 99 (54 SE 74), "If the writing represented the contract as

the defendant understood it, of course it could not be reformed in accordance with the plaintiff's conception of it."

Accordingly, it was not error for the trial judge to sustain the general demurrer to Count IV of the petition.

■ Count V of the petition is grounded on fraud and seeks rescission of the contract.

"From the allegations of the petition in this case it appears that the plaintiffs chose to rely upon the representations made by the defendants respecting the terms of the leases and the terms of payment of the rental on the property leased. It is alleged in general terms that these representations were false and fraudulent, and that the plaintiffs were injured by relying and acting upon the same. The petition is defective in that the facts alleged are insufficient to charge actual fraud, as ruled in *Emlen v. Roper*, 133 Ga. 726 (66 SE 934), and *Mangham v. Cobb*, 160 Ga. 182 (127 SE 408), and that it does not disclose any emergency or condition authorizing the plaintiffs to rely upon these false representations without themselves examining the leases purchased. If they had an opportunity to do so (and the petition fails to allege the contrary) and failed to avail themselves thereof, they are not entitled to complain of the deception which they allege was practiced upon them. Their allegations do not show either that they had no such opportunity, or that they were prevented by the fraud or deceit of the defendants from examining the leases purchased from the defendants. *Castleberry v. Scandrett*, 20 Ga. 242; *Allen v. Gibson*, 53 Ga. 600; *Falkner v. Lane*, 58 Ga. 116; *Baldwin v. Daniel*, 69 Ga. 783 (6a); *Martin v. Harwell*, 115 Ga. 156 (3) (41 SE 686); *Hayslip v. Fields*, 142 Ga. 49 (82 SE 441)." *Arthur v. Brawner*, 174 Ga. 477 (163 SE 604).

Comparing the allegations of the petition in the case under consideration with those in the case of *Arthur v. Brawner*, supra, we find that in the instant case the petition shows on its face that the plaintiffs had an opportunity to examine the option, but apparently signed without doing so. In addition, there can be found no allegations of any emergency or condition authorizing the plaintiffs to rely upon the alleged fraudulent representations by Byck. See *Morrison v. Colquitt County*, 176 Ga. 104 (167 SE 321); *Browning v. Richardson*, 181 Ga.

413 (182 SE 516); *Karpas v. Candler*, 189 Ga. 711 (7 SE2d 243).

Plaintiffs' brief, which devotes only two sentences and no law to the argument of their fifth count, indicates a lack of confidence in this ground. We think that their lack of confidence is well placed.

It was not error for the trial court to sustain a general demurrer to Count V of the petition.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., and Candler, J., who dissent.*

DUCKWORTH, Chief Justice, dissenting. Proper construction of statutes and contracts requires an acceptance of all unambiguous provisions and forbids nullification of any provision of either. It is my firm conviction that the majority opinion offends this universal principle by giving full effect to *Code* § 37-806, which is beneficial to the optionee, then ignores the significant and unambiguous provision in the option that in the event the optionors are, because of want of title, unable to convey the lands described "the consideration of this option and extensions shall be returned." Here the parties familiar with *Code* § 37-806 deliberately chose to fix their respective rights in case of want of title by their contract rather than allow them to be fixed under *Code* § 37-806. Parties have a right to waive their rights under law, provided the public is not injured thereby. *Code* § 102-106.

The unfairness and unsoundness of the majority ruling is demonstrated by assuming that the parties have fully executed the contract provision for a refund of the consideration, and either party could legally compel such performance, thus rendering the option a nudum pactum; yet it is being enforced by a court of equity. The contract contains the basis agreed to by all parties for settlement in the event of want of title, and it is a waiver of *Code* § 37-806 and states the limit of optionors' liability. Had the parties failed to contract as to their respective rights in the event of optionors' not having title, those rights would have been fixed by *Code* § 37-806, and they are charged with knowledge of that law. Or, if they had wished to retain any rights under that law and also contract as they did, they could have written into the contract the option to settle under the law rather than the contract. But with the total

absence of any of these facts the contract controls in fixing their rights, and the majority have ignored the contract provision for such settlement. The option provision for a refund protected both parties—the optionee in getting his money back, and the optionors in limiting their liability to the refund. It is neither good law nor fair to the parties to say that if title to all the described lands and not just a part of it was lacking the refund should be made. Such construction adds something to the agreement. Obviously want of title to the smallest portion of the described lands is a want of title thereto, and the agreement provides for the refund in that event. Had the parties desired they could have contracted that only in the event optionors had no title to any part of the described lands a refund could be made, but they did not do so and they get that result by the court's decision which nullifies their contract. Courts have no right to thus change a contract.

The most complete, the purest, and the highest justice that this court can give these parties is to allow their rights to be exactly what they freely agreed with each other those rights should be and expressed in their contract. To deny them such rights is to defeat justice. For the foregoing reasons I dissent. I am authorized to state that Mr. Justice Candler concurs in this dissent.