**J. B. LANIER** and Southern Pine Products, Inc., Plaintiffs,

v.

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA,** Defendant.

Civ. A. No. 7990.

United States District Court
N. D. Georgia,
Atlanta Division.

Feb. 13, 1964.

Greene, Neely, Buckley & DeRieux, Atlanta, Ga., for plaintiffs.

Smith, Field, Ringel, Martin & Carr, Atlanta, Ga., for defendant.

MORGAN, District Judge.

This is an action by J. B. Lanier, a resident of Georgia, and Southern Pine Products, Inc., a Georgia corporation, as plaintiffs against the American Casualty Company, a Pennsylvania corporation, as defendant, to reform a contract of liability insurance. Plaintiffs seek to reform the contract of insurance and to recover $9,250.00 paid to settle certain claims arising out of a collision of plaintiff's tractor-trailer combination with another vehicle. Plaintiffs also seek attorneys' fees and damages in the amount of $7,312.50 under the provision of Code Section 56–1206 of the Georgia Code Annotated.

On January 27, 1964, the above action came on for trial before this Court without a jury, and after hearing the evidence and receiving the briefs and written arguments of counsel, the case is now properly before the Court for determination.

This Court has jurisdiction of the parties to this case by virtue of the provisions of Section 1332 of Title 26 United States Code.

During 1957, J. B. Lanier owned a 1957 Chevrolet tractor, blue in color, Serial No. LA57A–110143, which was used in combination with a Fruehauf-Hobbs trailer, Serial No. 944468. Both the blue Chevrolet and Fruehauf trailer were covered by liability insurance with the Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company (hereinafter called P. T. & F.) under Policy No. AC 98 89 11, with the policy period from April 18, 1958, to April 18, 1959. These units, as a combination, were leased to Southern Pine Products, Inc.

During the early part of 1959, J. B. Lanier also owned a 1957 Chevrolet tractor, green in color, Serial No. 6A57A–113429, which was used in combination with a Dorsey trailer, Serial No. 28494. According to Lanier, these units were originally covered by liability insurance with P. T. & F. while the green Chevrolet-Dorsey combination was leased to Southern Pine Products, Inc. However, in March of 1959, the green Chevrolet-Dorsey combination was taken out from under the lease agreement with Southern Pine Products and leased to Crown Planing Mills of Aiken, South Carolina. Since Crown had a fleet policy, it was not necessary for Lanier to furnish or arrange for the insurance on the green Chevrolet-Dorsey combination while this combination was under lease to Crown.

At the time the units were leased to Crown, Lanier went to the Walter Harrison Insurance Agency at Millen, Georgia, and instructed the manager of the agency, one George Sasser, to "suspend" or "put in escrow" the P. T. & F. policy which had covered the green Chevrolet-Dorsey combination.

Lanier, at this time, had been doing business with the Walter Harrison Insurance Agency for some fourteen years and had purchased all of his insurance, both personal and business, liability and fire, from this agency. The business dealings between Lanier and Sasser were informal. It appears from the evidence that Lanier depended upon Sasser to obtain coverage for him when coverage was requested. Lanier never instructed Sasser what company to place coverage with, but relied entirely upon Sasser's judgment in this respect.

The Walter Harrison Insurance Agency at one time had been an agent of

P. T. & F., but by April 1, 1959, had been suspended as an agent of P. T. & F. because of overdue accounts. In April of 1959, the Walter Harrison Agency could not issue insurance policies for P. T. & F.

Shortly after the green Chevrolet-Dorsey was leased to Crown, Lanier sold the green Chevrolet tractor and replaced it with a 1958 Dodge tractor, Serial No. L8D8–1391. The Dodge-Dorsey combination continued to haul for Crown for a short period of time thereafter.

Sometime during the early part of April, 1959, Lanier and George Byrd, an officer of Southern Pine Products, agreed that the Dodge-Dorsey combination would again haul under lease for Southern Pine Products. At this time it became necessary for Lanier to obtain insurance coverage on the Dodge-Dorsey combination. Lanier normally arranged and obtained liability coverage for his units that were hauling for Southern Pine Products under lease, and when such coverage was obtained, the policies always named Southern Pine Products, Inc., as the named insured.

On April 10, 1959, Lanier visited the Walter Harrison Agency for the purpose of obtaining insurance coverage for the Dodge-Dorsey combination. Under Lanier's arrangement with Southern Pine, Lanier would obtain the coverage, and have the policy delivered or deliver the policy himself to Mr. Byrd; Mr. Byrd would then pay for the policy and deduct from Lanier's earnings the cost of the policy. Since both Lanier and Byrd were under the impression that the P. T. & F. policy which had covered the green Chevrolet-Dorsey combination was "in suspense" or "in escrow," Byrd instructed Lanier to simply have this policy "reinstated".

On this occasion when Lanier visited the Walter Harrison Agency, Sasser was out of the office for several days. Lanier thereupon told Mrs. Reta D. Toole, Sasser's secretary and an employee of the agency, that he wanted to either reinstate the P. T. & F. policy or to obtain coverage on the Dodge-Dorsey com-

bination if the P. T. & F. policy could not be reinstated. Lanier gave Mrs. Toole the serial numbers of the Dodge-Dorsey combination, told her the amounts of coverage he wanted, and instructed that the policy should list Southern Pine Products, Inc., as the named insured. Mrs. Toole advised Lanier that she would so inform Mr. Sasser when he returned to the office, and made a written memorandum for Mr. Sasser.

When Sasser returned, and on April 13, 1959, he (Sasser) confused the instructions from Lanier, and instead of simply obtaining coverage for Lanier and Southern Pine Products, as requested, on the Dodge-Dorsey combination, did the following:

(a) Endorsed P. T. & F. Policy No. AC 98 89 11 to delete the 1957 blue Chevrolet (LA57A–110143) and substituted in lieu of the blue Chevrolet the 1958 Dodge (L8D8–1391);

(b) Issued a completely new policy with American Casualty Company of Reading, Pennsylvania Number T88–8965, covering the 1957 blue Chevrolet and the Dorsey trailer (28494). This policy had a policy period from April 13, 1959, through April 13, 1960.

Since the Walter Harrison Agency had been suspended as an agent for P. T. & F., the Harrison Agency could not write additional coverage with P. T. & F. According to Exhibit "E" of the Pre-Trial Order, it is contended by the defendant that P. T. & F. Policy No. AC 13 78 96 A was the policy which had been "placed in escrow". This policy, Plaintiffs' Exhibit No. 14, shows that it never covered the green Chevrolet and Dorsey trailer, and further shows that on November 7, 1958, this policy was transmitted by Sasser of the Harrison Agency to P. T. & F. for cancellation.

The effect of Sasser's action was to place both Lanier, as an additional insured, and Southern Pine Products, as the named insured, in a position where

none of the four vehicles were covered by either of the two insurance policies. This is true because the blue Chevrolet and Fruehauf trailer were still being used as a unit but were not covered in the same company, and this is also true because the Dodge and the Dorsey were being used as a combination but were not covered in the same company because of Sasser's mistake. Under exclusionary clauses of both the P. T. & F. policy and the American Casualty policy, there is a provision that there shall be no coverage while a tractor is used for towing any trailer not covered by like insurance in the same company. There can be no question but that none of the parties involved in this transaction intended for this situation to occur, that is, a situation where no coverage existed for any of the four units.

On April 15, 1959, the Dodge (covered with the P. T. & F. by reason of the endorsement of April 13, 1959) and the Dorsey (covered by the American Casualty Company policy issued on April 13, 1959) were being used as a combination, and were involved in a collision in the State of Florida. As a result of this collision, two persons were killed.

On the night of the collision or the early morning following, Lanier learned of the collision as the result of a long distance telephone call from someone in Florida. Lanier immediately telephoned Sasser, informed him of the collision and the units involved, and told Sasser that he would telephone him from Florida, where Lanier was preparing to go immediately. Lanier called Sasser from Florida and, during the course of this long distance telephone call, Sasser, an agent of American Casualty, informed Lanier that he was covered by the American Casualty Company.

The evidence shows that the American Casualty Company policy was not delivered to either Lanier or Southern Pine Products prior to the collision of April 15, 1959, and although the testimony is somewhat vague as to the actual delivery of the policy, it came into the hands of Southern Pine Products through Mr. George Byrd within a week or so subsequent to the collision.

Two actions for damages were instituted against the plaintiffs because of the Florida collision, and the defendant American Casualty Company was properly notified by the plaintiffs but refused to defend plaintiffs under the terms of said policy. The plaintiffs, on or about October 30, 1959, settled both death-claim actions for the sum of $9,250.00.

Plaintiffs contend that they are entitled to a reformation of the contract and for the repayment of the $9,250.00 plus, in addition thereto, 25 percent penalties and reasonable attorneys' fees.

The facts as set out above relate to the question of reformation, and the plaintiffs contend that on these facts they are entitled to a reformation of the contract. Lanier, the applicant, testified as to his intent and acts regarding the issuance of the policy. Lanier requested Mrs. Toole to tell Sasser to either reinstate the old P. T. & F. policy (which Sasser could not do, although this fact was unknown to Lanier) or obtain coverage for the Dodge-Dorsey combination. Sasser testified that he became confused and made a mistake and did not follow Lanier's instructions. Sasser's evidence is that he intended to obtain new coverage for the Dodge-Dorsey combination with American Casualty Company, but that he made a mistake in endorsing the P. T. & F. policy and in listing the wrong units in the American Casualty policy. Although George Byrd testified that he instructed Lanier to have the old P. T. & F. policy reinstated, Byrd did not know that the Walter Harrison Agency had been suspended as agent for said company, and neither did he know that the P. T. & F. policy had been cancelled. Evidence adduced at the trial of both the plaintiff and the defendant showed that there is no provision in a policy for holding a policy "in suspense" or "in escrow".

The evidence of Lanier and Sasser is not at variance as to what coverage was intended for Lanier and the vehicles that were to be covered by such

insurance. The evidence is undisputed that Sasser intended for the units involved in the Florida collision to be covered by the American Casualty policy. It must be considered that Sasser was at all times agent for American Casualty Company and was not qualified to write for P. T. & F. at the time the coverage was requested by Lanier. Sasser, the defendant's agent, intended to issue the coverage to Lanier with the defendant's policy on a 1958 Dodge tractor (Serial No. L8D8–1391) with the Dorsey trailer. The description of this Dodge-Dorsey combination with the serial numbers was furnished to the insurance agency by Lanier, the applicant. Sasser, the agent, inadvertently substituted the blue Chevrolet (already covered by another policy) for the Dodge. Sasser's inadvertent substitution of the Chevrolet for the Dodge under the circumstances shown by the evidence and the issuance of the policy by Sasser make a case of mutual mistake relievable in equity. Under Georgia law, where on oral application for a policy of insurance to indemnify the applicant against loss, the proper agent of the insurer agrees to issue to the applicant a policy of insurance as contracted for, but by mistake the insurer's agent inadvertently inserts another's name as the insured, equity will reform the policy so as to make it accord with the oral agreement of the parties. Niagara Fire Insurance Company v. Jordan, 134 Ga. 667, 68 S.E. 611. Although the Niagara case concerns the improper insertion of a named insured, where the agent mistakenly inserts the wrong vehicle, as was done in the case under consideration, this Court feels that the same principle would be applicable. See also the case of Jacobs v. Merchants Fire Assurance Corporation, 99 F.2d 655, 657 (5 Cir., 1938) in which the late Judge Sibley cites with approval the Niagara case and holds:

> "Where through fraud, accident or mistake the writing fails to express the true agreement a reformation may be had in equity."

Defendant contends that there should be no reformation because the error and mistake were not mutual as required by the law of Georgia, and cites as authority the recent Georgia case of Lawton v. Byck, 217 Ga. 676, 681, 124 S.E.2d 369. This case appears to be authority for reformation in the case at hand. In the Lawton case, Judge Mobley, of the Georgia Supreme Court, defines "mutual mistake" as follows:

> " 'Mutual mistake, in relation to reformation, means a mistake shared by, or participated in by, both parties, or a mistake common to both parties, or reciprocal to both parties; both must have labored under the same misconception in respect of the terms and conditions of a written instrument, intending at the time of the execution of the instrument to say one thing and by mistake expressing another, so that the instrument as written does not express the contract or intent of either of the parties.' 76 C.J.S. 364, 365, Reformation of Instruments, § 28."

For the reasons stated above, the policy should be reformed as contended by the plaintiffs.

The contention that judgment is demanded in its favor by the defendant because of a certain loan receipt issued by Lanier and Southern Pine Products to P. T. & F. is without merit. Section 37–213 of the Georgia Code Annotated permits and does not prevent recovery in the case at hand.

The final question to be determined is the plaintiffs' contention that they are entitled to attorneys' fees and 25 percent penalties because of bad faith of the defendant in refusing payment of the claims. Code Section 56–1206 of the Georgia Code Annotated provides in part as follows:

> "56–1206. *Liability of insurer for damages and attorney's fees*—In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same with-

in 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 25 per cent. of the liability of the insurer for the loss and all reasonable attorney's fees for the prosecution of the case against the insurer. * * *"

 In Georgia, the refusal of an insurance company "in bad faith" to pay means the frivolous and unfounded denial of liability. If there is any reasonable ground for contesting the claim, there is no bad faith. Pearl Assurance Company v. Nichols, 73 Ga.App. 452, 455, 37 S.E.2d 227. Whether there was any reasonable ground for contesting the claim is a matter which depends upon the circumstances existing when liability is declined or not admitted, not by the event of the ultimate determination. Hanover Fire Insurance Company of New York v. Argo, (5 Cir., 1957) 251 F.2d 80, 83.

From the complicated state of facts considered by the Court in this case, it cannot be said that such questions are easy of solution. Under these circumstances, this Court cannot say that a resort to the Court by the defendant to have these questions determined was unreasonable. Certainly, the defendant should not be charged with penalties and attorneys' fees under the state of facts in this case. See Massachusetts Benefit Life Association v. Robinson, 104 Ga. 256, 291, 30 S.E. 918, 42 L.R.A. 261; Morris v. Imperial Insurance Company, 106 Ga. 461, 32 S.E. 595.

The plaintiffs are entitled to recover the sum of $9,250.00 against the defendant American Casualty Company. The plaintiffs are not entitled to recover penalties or attorneys' fees from the defendant.

Let all costs of court herein be adjudged against American Casualty Company.

This memorandum decision shall be considered as the Findings of Fact and Conclusions of Law herein as authorized by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

Let judgment be entered accordingly.