61659. CLUB MEDITERRANEE, S. A. et al. v. STEDRY.

DECIDED JUNE 24, 1981 —

*James J. Brissette, Lowell S. Fine,* for appellants.
*Steven D. Harris, Robert B. Harris,* for appellee.

DEEN, Presiding Judge.

1. We do not agree with the appellant that the damages were based on the plaintiff's "subjective evaluation of defendants' brochure," or on mere puffing. The line between advertising which merely creates a promise, prophecy or expression of opinion, and advertising, although structured to future results, which conveys a false impression so intentionally overreaching as to rise to the level of an implied contract is often a fine line but it exists nevertheless. "If by number of statements you intentionally give a false impression and induce a person to act upon it, it is not the less false although if one takes each statement by itself there may be a difficulty in showing that any specific statement is [deliberately] untrue." Downey v.

Finucane, 205 N. Y. 251, 264, 98 NE 391, 395. An excellent example may be found in Stad v. Grace Downs Model and Air Career School, 319 N. Y. S. 2d 918, where strong and overreaching blandishments of the result to be obtained from the courses offered ("If you were accepted you may rest easy about your future in the fascinating airlines field"; "Free Placement to Graduates," etc.) were held to create an implied contract to secure employment for the school's graduates and acted to create an atmosphere of guaranty of placement which became a part of the enrollment contract under the entire climate of the situation, instead of the "laminated 3 1/2 by 2 1/2 inch card diploma" which proved to be the plaintiff's only reward for the investment of her time and money.

The trial judge in a lengthy and accurate analysis went over the evidence as it contrasted with the specific promises of the brochures on which the plaintiff acted. Guaranteed air reservations were nonexistent, and the family underwent several days of standby wait both coming and going between Los Angeles and Papeete. On arrival there was also a lengthy wait for a cottage. Promised sports, tennis, scuba, boat transportation to reefs, etc. were unavailable except at undesirable hours and after long waits. The same was true of meals. All facilities were overcrowded. Rooms were bug infested, promised services were not provided, and so on. After numerous complaints the family was offered a transfer to Club Med's other village at Bora Bora. They tried this, found it worse than the first one, and eventually moved to a hotel where they completed their vacation. The judge found the factual evidence a total misrepresentation of the vacation offered: "The good life . . . A carefree ambiance . . . a casual yet elegant reflection of the local environment . . . facilities with the emphasis on fun . . . uncrowded white beaches . . . active sports . . . The Club gives them all to you . . . first class equipment rent-free and instruction at all levels for sports . . . Tranquility is yours . . . a fun-filled vacation to remember . . . Lots of space to be alone . . . Fall under the spell of our gentle natural lifestyle as you begin discovering the true meaning of the Tahitian saying . . . only happiness is important." Here, as in *Stad,* supra, the court concluded that this fairly costly vacation raised a reasonable expectation that a certain ambiance and amenities were guaranteed which in fact degenerated into a hot, buggy, overcrowded and unpleasant experience with few services provided.

2. The award of punitive damages is supported by some evidence relative to each of the five elements of fraud: that the representations were made, that they were false, that the defendant necessarily knew of their falsity at the time the offer was made to the plaintiff and was intended to deceive him, and that the plaintiff did in

fact suffer damages as a result of his reliance on the offers made. *City Dodge, Inc. v. Gardner,* 232 Ga. 766 (208 SE2d 794) (1974). It is true that this case differs from the usual fraudulent advertising situation in that the defendant did in fact have an apparent ability to offer each of the factually listed elements of the vacation — the flower filled paths, turquoise reefs, uncrowded white beaches, clean comfortable living quarters, ambiance of relaxation, array of sports, and so on. But the vacation which is what the customer thinks he is buying, was destroyed by lack of services, overcrowding of facilities, and failure to make the individual arrangements guaranteed. Under the evidence offered punitive damages were authorized. It cannot be argued that the plaintiff failed to exercise diligence to discover the true situation ahead of time (*Lawton v. Byck,* 217 Ga. 676 (4) (124 SE2d 369) (1962)) since he could hardly explore Papeete and Bora Bora personally in advance, nor that he had no right to rely on the representations made, since he had in fact had a prior vacation at the defendant's facilities in Mexico which he had found satisfactory.

3. There was no error in failing to reduce the plaintiff's damages by sums which he had contracted to pay. Certainly the defendant was not entitled to keep sums for which it had put out nothing after the defendant and his family departed the premises nor sums as to which there had been a failure of consideration. From that point until they were at last able to arrange for and obtain transportation back to Los Angeles their damages were the amount it was necessary for them to spend for room, board and other essentials in the meantime. These were the costs the plaintiff necessarily incurred after declaring a breach of contract and thus repudiating the remainder of performance on the part of the defendant. "Damages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered." Code § 105-2009. The case might be analogized to *Brown v. Ga. C. & N. R. Co.,* 119 Ga. 88 (3, 4) (46 SE 71) (1903), where the defendant breached its contract to transport its passengers, who in consequence suffered damage from being forced to spend the night in a station-house lacking minimum facilities. Here the plaintiff not only proved failure of consideration under the contract but was forced to spend additional funds for other facilities. The amount of damages is supported by the evidence.

*Judgment affirmed. Quillian, C. J., McMurray, P. J., Banke, Birdsong and Pope, JJ., concur. Shulman, P. J., concurs specially. Carley and Sognier, JJ., dissent.*

SHULMAN, Presiding Judge, concurring specially.

In this case the claims and representations for a vacation paradise far exceeded ordinary advertising "puffing." If the

appellants did not know that the adverse conditions existed and that their brochure was totally inaccurate, it was their business to determine its accuracy before its exploitation to the public. To me, this is fraud; the change in the travel arrangements and other material misrepresentations show a total disregard for the rightful expectations of the customer. The final reality of what he received in exchange for his money was just the opposite of what appellee was led by appellants to expect. I consider this case closely akin to *McClure v. Thomas Cook, Inc.,* 158 Ga. App. 467 (280 SE2d 876) (1981), and I therefore agree with the majority and would affirm.

CARLEY, Judge, dissenting.

A review of the record in this case leaves one convinced that, indeed, plaintiff-appellee had a lousy vacation. However, the question to which that conclusion is a response is not the issue which we must decide from an appellate standpoint; nor was it the issue before the trial judge. I can even go so far as to agree with the majority that the circumstances show a breach of contract so that compensatory damages may be allowable. But I simply cannot find that the conduct of the defendant here rises to the level of fraud so as to authorize the award of punitive damages. Contrary to the majority, I do feel that plaintiff contends he was defrauded because what he got was not what he "saw" when he focused his eyes, which were filled with subjective anticipation, upon the rather grandiose enticements of defendant's travel brochure. As the majority concedes, all of the facilities offered *were* available, albeit not at the time nor in the exact manner which plaintiff felt they should be. Evidently plaintiff desired—and the trial court thought he should obtain—access to all of the promised facilities upon demand. However, I do not find that the material containing the alleged representations by the defendant made such a "guarantee." Apparently, the plaintiff feels that the defendant promised him: "You *will* have a good vacation." I believe that a promisor's compliance with such a subjective guarantee, varying in interpretation with every recipient thereof, is too speculative and nebulous to be capable of judicial measurement by a court charged with determining the existence of fraud. "Representations under the general head of 'dealer's talk' are regarded as mere commendations, 'puffing,' or expressions of opinion, and do not, though untrue, constitute false representations which will avoid a contract. [Cit.] The representations to support a claim must relate to an existing fact and not a future event, unless it be an event which the party making the representation knows will never occur. Mere broken promises, unfulfilled projections, and erroneous conjectures do not meet this test." *American Food Services,*

*Inc. v. Goldsmith,* 121 Ga. App. 686, 688 (175 SE2d 57) (1970).

*McClure v. Thomas Cook, Inc.,* 158 Ga. App. 467 (280 SE2d 876) (1981) does not require a different result from that which I urge in this case. In *McClure,* the defendant made to the plaintiff a specific unambiguous representation (that there would be young people on plaintiff's tour) which was false, and plaintiff made out a prima facie case as to all of the other requirements for showing fraud. If the ruling of the majority here is to be the rule of law applicable to similar situations, no travel agency or other enterprise sponsoring or having involvement with any type of recreational facility could promote or produce a "vacation" without separately evaluating the subjective construction placed upon each of their representations by each and every prospective customer. I do not believe that our law providing for redress for fraudulent conduct is that broad. I respectfully dissent.

I am authorized to state that Judge Sognier joins in this dissent.