22461. FARMERS WAREHOUSE OF PELHAM, INC. v. COLLINS.

142

ARGUED APRIL 14, 1964—DECIDED JULY 9, 1964.

*Twitty & Twitty*, for plaintiff in error.

*Robert Culpepper, Jr.*, contra.

MOBLEY, Justice. ■ In brief, as alleged, this controversy arose as follows: The three defendants, Huddleston, Ward, and Slate bought two tobacco warehouses in Pelham, Georgia, for $160,000. They organized two corporations and placed one warehouse and its operations in the defendant, Farmers Warehouse of Pelham, Inc., and the other in New Georgian Warehouse, Inc. Petitioner alleges that the individual defendants owned both corporations; that both have been operated as one business with common management and personnel; that after operating for three years the individual defendants entered into an agreement with plaintiff to sell him 25% of the stock in the corporation for $25,530 for which he gave his note, and by a written contract, referred to in the note and made a part thereof, it was agreed that "said note to be paid from dividends on said stock and services rendered by the said Collins to said corporations, it being agreed that all dividends earned by said stock and all salaries

due by said corporations to said Collins hereafter shall be credited on said note until fully liquidated, nevertheless, the said Collins shall have the right and option to pay said note from other resources belonging to him, if he so desires," and that the stock would be pledged as collateral for the note and that neither would sell any stock without offering it to the other; and it is alleged that they agreed orally that neither of the businesses in its entirety would be sold without giving to all of the stockholders the refusal to purchase same, but through omission this was not included in the written agreement; that for three years plaintiff performed valuable services for the corporations receiving no compensation therefor, and that then the two corporations, without his knowledge or consent, sold all the assets of the two corporations to the defendant Rogers. Prior to completion of the transaction, the defendants were temporarily restrained from completing the sale.

Before the judgment overruling the demurrers was rendered, the parties in this case and in the similar case of Collins v. New Georgian Warehouse, Inc., and Huddleston, Ward & Slate entered a stipulation agreeing that the sale of the corporations to Rogers be consummated according to the terms and conditions of the contract, without prejudice to any of the parties, and that the note and security deed from Rogers to the corporations for $75,000 payable $5,000 per year until paid, be placed in trust with the Pelham Banking Co. and held by the bank until further order of the court. The trial court approved the agreement, without prejudice to any issues involved, and dissolved the temporary restraining order.

This stipulation and order removed from the case the questions of injunction and receiver, and the facts alleged do not show a need for an auditor. Thus, in count 1 are left the prayers for a judgment for $25,875; that the stock purchase agreement be reformed; and that the court mould a decree to subject the assets of all the defendants to the satisfaction of any judgment plaintiff may obtain against defendants and for other and further relief as may seem meet and proper; and in count 2 judgment is asked for $7,500 and a like decree subjecting the assets of all defendants to satisfy any judgment obtained.

While much of the equity was removed from the case by the stipulation and order of the court, there is left a prayer for reformation of the contract, and the remedy at law would not be as full and complete as the remedy in equity. See *Baggerly v. Bainbridge State Bank,* 160 Ga. 556 (4) (128 SE 766). Thus this court has jurisdiction of the case.

In count 1 plaintiff seeks recovery of damages for breach of the stock purchase agreement existing between the three defendants, Huddleston, Ward, Slate, and himself. He asks that the corporate entity of the defendant, Farmers Warehouse of Pelham, Inc., be disregarded because it was used and operated as the individual enterprise of the three defendants to defraud plaintiff of his rights under their contract, and that the assets of the corporations be subjected to payment of any judgment recovered by him.

First, does the petition state a cause of action for breach of the stock purchase agreement? The agreement consisted of a promissory note for $25,530 signed by Collins and payable to Huddleston, Ward, and Slate with interest from date at 6% per annum and payable "as provided in contract hereto attached and made a part hereof." The contract recited that Huddleston, Ward, and Slate were sole stockholders of the New Georgian Warehouse, Inc. and the Farmers Warehouse of Pelham, Inc. and had agreed to sell and Collins agreed to buy one-fourth of the corporate stock of both corporations for $25,530 "for which Collins has executed and delivered his promissory note; said note to be paid from dividends on said stock and services rendered by said Collins to said corporations, it being agreed that all dividends earned by said stock and all salaries due by said corporations to said Collins hereafter shall be credited on said note until fully liquidated, nevertheless, the said Collins shall have the right and option to pay said note from his own resources. . . ." There was a further provision that no one of the parties would sell any of his stock without first offering it to the others upon the same terms they would offer to sell it to any person not a stockholder. Since the petition does not allege that the defendants have sold any of their stock, there obviously

has been no breach alleged of the provision of the contract requiring that each of the parties offer to the others any of his stock before selling to an outsider.

But plaintiff contends that by selling the warehouses, which were all the assets of the corporations, the defendants have breached the contractual provision that his note should be credited with services rendered by him to the corporations and dividends paid until the note was fully liquidated, for the sale has terminated his salary so that he no longer has the means to pay for his stock as agreed. His theory is that such a hindrance or quashing of his ability to perform amounts to a breach of the contract. Simpson in his Handbook of the Law of Contracts, 508, § 143, states: "Where a party to a contract for an agreed exchange of performances knowingly prevents, hinders, or makes more costly the other's performance, such conduct is a breach of contract for which an action will lie. The breach is of an implied promise against prevention. An exception exists where, even though there had been no prevention, the other party could not or would not have performed his promise anyway. *There is a further exception where the action which hinders the other's performance was permitted by the express or implied terms of the contract, so that the risk of its non-happening was a risk that was assumed by the plaintiff.*" (Emphasis ours). See also Restatement of Contracts, 468, § 315. The latter exception is applicable to the instant case. The contract contained no provision that the corporation would stay in business or not sell its assets until the plaintiff had completed paying for his one-fourth stock. Such an agreement would severely bind and destroy the business freedom of a corporation, and all that was agreed upon was that the plaintiff would be credited his dividends and salary as they accrued toward a complete liquidation of his note. The plaintiff was given the right or option to pay for the stock from other sources in satisfying his note, and he assumed the risk of the possibility of the corporations going bankrupt and dissolving, or their assets being sold, or for some other reason the corporations might have to take action which could cause his salary to terminate. Furthermore, the contract did not bind the corporations to employ plaintiff, as the corporations were not a party to it.

However, petitioner alleges that defendants, Huddleston, Ward, and Slate, individually, and as agents of the corporations and acting for them, fraudulently conspired to defraud plaintiff of his rights under the stock purchase agreement for his services rendered the corporation and his share of earnings of the business by selling the assets. While there is that general allegation of fraud, the petition alleges specifically that the defendants were moved to sell from undue fright that the opening of a new market in Pelham in 1959 claiming a third of floor space would hazard the business. Construing the petition most strongly against the plaintiff as must be done on general demurrer, we must conclude that they acted in good faith in selling, as they were afraid that the opening of a new warehouse would hazard their business, which is a bona fide business reason for selling which negates fraud. Furthermore, they sold the business for $100,000 and there is no allegation that this was not a fair price, and too, a corporation has the legal right to sell its assets. The petition does not allege a cause of action for breach of contract.

Does the petition allege a cause of action for reformation of the contract? In this connection the petition alleges ". . . it was agreed by the parties that neither of the businesses in their entirety would be sold without giving to all stockholders the refusal to purchase same, and it was intended and agreed that it be executed by the defendant corporations, and such omission was a mistake of fact material to the matter, and petitioner asks that this court of equity, with all of the parties before it, reform such agreement so that it will speak the true contract, and require the execution thereof by such corporation."

"A bill of complaint in a suit to reform a written instrument must clearly and distinctly state what was the contract or agreement between the parties, and show what part of the contract was omitted when it was reduced to writing, or what portion of the contract as it was expressed in the writing was not embraced in the original contract. "If mistake is relied on, it must be distinctly charged and stated with precision, the particular mistake being shown and how it occurred. In other words, the pleader should state why the terms of the actual contract hap-

pened to be left out, or how terms not agreed on came to be inserted. 23 R.C.L. 361.' *Frank & Co. v. Nathan,* 159 Ga. 202, 208 (125 SE 66); *Martin v. Turner,* 166 Ga. 293 (143 SE 239); *Brooks v. Northwestern Mutual Life Ins. Co.,* 193 Ga. 522 (18 SE2d 860); *Wheeler v. Poole,* 204 Ga. 477 (50 SE2d 326)." *Lawton v. Byck,* 217 Ga. 676, 682 (124 SE2d 369). "Equity will not reform a written contract, unless the mistake is shown to be the mistake of both parties . . ." *Code* § 37-207. The power to relieve in equity "shall be exercised with caution, and to justify it the evidence shall be clear, unequivocal, and decisive as to the mistake." *Code* § 37-202.

The allegation fails to meet the requirements for reformation for the reason that it does not state with precision how the mistake occurred, why the omitted part was left out, who left it out, or that through mutual mistake of both parties it was left out, or whether one of the parties was responsible for leaving it out. Furthermore, a fatal defect is that it seeks reformation of the contract between plaintiff and defendants, Huddleston, Ward, and Slate by adding a new party to the contract, the corporation, which it is alleged the parties to the contract had agreed would execute the contract, and asks further that the corporation be required to execute the contract. Just what execution is intended and what the corporation would agree to is not alleged, nor is any legal obligation of the corporation to execute the contract alleged. Clearly the petition fails to state a cause of action for reformation of the contract.

█ The petition does state a cause of action against the individual defendants, Huddleston, Ward, and Slate for some of the relief sought. The note given by plaintiff to the defendants, Huddleston, Ward, and Slate for the purchase price of one-fourth of the stock of the two corporations and the written contract which was made a part of the note constitute the contract, which is a valid agreement between the parties. Plaintiff is entitled to all rights accrued or accruing to him thereunder.

He alleges that he had rendered services pursuant to the contract to the corporations of the value of $15,000. Under the contract he would be entitled to a credit on the note of this amount if proved. He would also be entitled to credit on the

note of any dividends declared by the corporations. He is not entitled to one-fourth of the profits made during the three years' operation of the business since the execution of the contract, as he has only a contractual right to have dividends credited on his note. A stockholder has no right to demand the profits of the corporation until such profits are declared and set aside as dividends. *Central of Ga. R. Co. v. Central Trust Co.*, 135 Ga. 472, 474 (2) (69 SE 708).

Dividends declared must be credited on plaintiff's note, and in the event of the liquidation of the corporations, plaintiff would be entitled to have his one-fourth share in the corporations credited against his note, and any excess would be due and payable to him as a stockholder. In the event his services, dividends, or his share of profits upon liquidation are not sufficient to pay off the note in full, he, of course, is only entitled to the proportionate share of the one-fourth stock as is paid for.

Count 1 states a cause of action against the individual defendants, Huddleston, Ward, and Slate for the relief outlined above.

■ Plaintiff contends that the corporate entity of the two corporations should be disregarded and that the corporations should be held liable along with the individual defendants for what is due him under the stock purchase agreement, the basis being that there is such unity of interest between defendants and the corporations as to make them one, and that the corporation is the mere business conduit and alter ego of the individuals.

First, plaintiff relies upon the allegations that the two corporations have been operated as one business with common ownership, common management, common personnel, and with joint bank accounts and joint profit and loss statements, and that defendants were the sole officers, directors, and stockholders of the two corporations. These matters would be factors to consider in disregarding the corporate fiction as between the two separate corporate entities and treating them as one, but are not sufficient to establish that there is such unity of interest as between the corporations and the defendants to treat them as one. There is no showing that the individual defendants commingled their property, business, or their personal affairs with

that of the corporations, or that of the corporations with their own. See 13 Am. Jur. 1217, § 1383, note 8.

Next, the basis for the contention that the corporation is the mere alter ego or business conduit of the defendants is that the defendants first made a note on behalf of the corporations with plaintiff, but later canceled it in exchange for a note from plaintiff made payable to themselves. Since defendants owned the stock which was the subject of the sale in the agreement and the corporations had no stock to sell, it was proper for the stock purchase note and contract with the corporations to be canceled and have substituted therefor a note and contract between defendants, who owned the stock, and plaintiff.

Where the courts have disregarded the corporate entity because the corporation is the mere alter ego or business conduit of a person, it has generally been on the idea that the corporate entity has been used as a subterfuge and to observe it would be to work an injustice. "To establish the alter ego doctrine it must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud." Fletcher Cyclopedia Corporations, Vol. 1, § 41.1, p. 169, and cases cited. See also Nadler, Georgia Corporation Law 69, §§ 60-66; *Condenser Service &c. Co. v. Brunswick Port Authority,* 87 Ga. App. 469, 474 (4), (74 SE2d 398) ; 18 CJS 380, § 7b.

Great caution should be exercised by the court in disregarding the corporate entity, for as pointed out in *Exchange Bank of Macon v. Macon Const. Co.,* 97 Ga. 1, 5 (1) (25 SE 326, 33 LRA 800), "Every corporation is a person—artificial it is true, but nevertheless a distinct legal entity. Neither a portion nor all of the natural persons who compose a corporation, or who own its stock and control its affairs, are the corporation itself . . ." We do not think that the allegations are sufficient to show that there was such unity of the individual defendants and the corporation as to make them one, or that the corporation was the mere conduit or alter ego of the defendants to the extent that

the separate personalities of the corporation and the owners no longer exist. Furthermore, under the rulings made in paragraphs (a), (b), and (c) of this division, the plaintiff has a cause of action for enforcement of his rights under the note-stock purchase contract as against the parties thereto, the three individual defendants, and not against the corporation. Those rights consist in having credited on his note, given for purchase of one-fourth stock of the corporations, any amount due him for services rendered the corporations, dividends, and in the event of liquidation, his share of the profits due him as a stockholder. It is not necessary to disregard the corporate entity for him to acquire his rights under his contract.

The court did not err in overruling the general demurrer and the special demurrers to count 1 of the petition as against the individual defendants, Huddleston, Ward, and Slate.

The court erred in overruling the general demurrer to count 1 of the petition as against the defendant, Farmers Warehouse of Pelham, Inc.

Affirmed in part and reversed in part as to count 1.

■ The plaintiff may allege facts to recover under the written contract in one count and also allege facts to recover under the theory of quantum meruit so long as he does so in separate counts. *Brannen v. Lanier*, 97 Ga. App. 30 (2) (102 SE2d 96); *Ford v. Harden*, 94 Ga. App. 902 (2) (96 SE2d 617). Plaintiff in count 2 alleges that the individual defendants made him a proposition to buy stock in the two corporations, which he accepted, and thereafter he rendered valuable services to the corporations. He further alleges that these services he performed for the corporations in 1957, 1958, 1959 were of the reasonable value of $5,000 per annum and that he has received no payment therefor except several hundred dollars in tobacco plants, and that such services "were rendered with knowledge of defendant corporation, and accepted by such corporation, and there is an implied obligation on the part of the defendant corporation to pay the reasonable value thereof." Plaintiff seeks to recover one-half the value of said services from the defendant corporation in this action and the other one-half from the New Georgian Warehouse in a similiar pending action.

152

We are of the opinion that the allegations in count 2 are sufficient to establish a cause of action against the defendant corporation under the theory of quantum meruit. *Code* § 3-107 provides: "Ordinarily, when one renders services or transfers property valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof . . ." See also *Hudson v. Hudson*, 90 Ga. 581 (16 SE 349); *McLendon v. Moore*, 42 Ga. App. 580 (2) (157 SE 214). Although the corporation by accepting the services and benefits rendered it by the plaintiff became liable to pay the reasonable value thereof, the corporation is entitled to have deducted from this amount the value of any payment made to the plaintiff for his services; therefore, since the plaintiff acknowledges receiving certain tobacco plants for his services, the value thereof is to be deducted from what is found to be the reasonable value of the services rendered the corporation by the plaintiff.

The court properly overruled the general demurrer to count 2 of the petition as against the defendant corporation, Farmers Warehouse of Pelham, Inc., and it was not error to overrule the special demurrers.

The court erred in overruling the general demurrer to count 2 of the petition as against the individual defendants, Huddleston, Ward, and Slate.

Affirmed in part and reversed in part as to count 2.

*Judgment affirmed in part; reversed in part. All the Justices concur.*