66975. TRANS-STATE, INC. et al. v. BARBER.

CARLEY, Judge.

Appellee-plaintiff brought suit to recover $8,545.50, an amount representing the value of diesel fuel that it had sold on account. It is undisputed that the account was in the name of State Express, Inc. (State Express), a defendant below but not a party to the instant appeal. It is also undisputed that in payment of the account appellee had received a check, subsequently dishonored, which was drawn on the account of State Express. In addition to State Express, appellant Teal was named as a defendant in the suit. The allegations of the complaint against appellant Teal were that he had "assumed and guaranteed the payment of the debt . . ." Appellant Trans-State, Inc. (Trans-State) was also named as a defendant in the suit, although the complaint was unclear as to the exact basis upon which Trans-State's liability for the State Express account was being asserted.

Pursuant to OCGA § 9-11-39, the case was heard before the trial judge sitting without a jury. At the conclusion of the evidence, the trial judge ostensibly made oral findings of fact and concluded that appellee "would be entitled to a judgment against each of the defen-

dants jointly and severally in the amount prayed for and interest from date." A joint and several judgment comporting with the trial judge's oral pronouncement was entered for appellee. Only appellants Teal and Trans-State appeal, enumerating the general grounds.

The final written order of the trial judge contains no findings of fact or conclusions of law but, instead, recites that such findings and conclusions were "expressly waived in writing . . ." We find no such express written waiver in the record before us. *Motes v. Stanton*, 237 Ga. 440 (228 SE2d 831) (1976). Nor do we find any indication of an oral waiver by the parties. Appellants do not, however, enumerate as error the failure to find facts and make conclusions of law in writing, and we can but assume that the trial court's statement that its duty in this regard was properly waived by the parties is accurate. See *Jardine v. Jardine*, 236 Ga. 323 (1) (223 SE2d 668) (1976). We are compelled to note, however, that written findings and conclusions are not solely for the benefit of the parties. "The reason for this requirement is to assist this court in its review of the merits of an appeal. [Cits.]" *Coleman v. Coleman*, 238 Ga. 183 (232 SE2d 57) (1977). Findings and conclusions would be most helpful in a case such as that at bar, which presents a rather complex and confusing set of facts. *Motes v. Stanton*, supra.

1. We turn first to appellant Teal's assertion that there was no evidence authorizing a finding that he was personally liable for the State Express account. The trial judge apparently found that there were two bases for imposing personal liability on appellant Teal for the corporate account. The first basis was a "piercing of the corporate veil" and the second was Teal's personal guaranty of the corporate debt.

The relevant evidence is as follows: In June of 1981, an "Agreement For Purchase and Sale of Assets" was entered between State Express as seller and Trans-State as buyer. The agreement was signed on behalf of Trans-State by Teal in the capacity of corporate president. However, at the time the agreement was signed, Trans-State was not yet in existence, its formal incorporation not taking place until July of 1981. Under the terms of the agreement, State Express agreed to sell certain of its assets to Trans-State, contingent upon approval by certain government agencies. Those assets consisted of several of State Express' certificates of operating authorities for intrastate and interstate shipments. It is undisputed that these assets which were to be sold to Trans-State did not constitute the entirety of State Express' assets and that, both before and after the sale, State Express was a separate corporate entity with operating authorities other than those sold to Trans-State.

In the interim between execution of this contract of sale and its subsequent consummation after approval by the requisite governmen-

tal agencies, it appears that the operation of State Express, at least as to the operating authorities which were to be sold to Trans-State, was placed in the hands of Teal. However, there is absolutely no evidence that, during this interim period when Teal was "operating" State Express, he "pierced the corporate" veil that existed between himself and the corporation that he was operating. Mere "operation" of a corporation does not render one personally liable for the corporate debts. "Courts permit 'piercing the corporate veil' 'in situations where the parties involved have themselves disregarded the separateness of legal entities by a commingling and confusion of properties, records, control, etc.' [Cits.] It is obvious that if the individual who is the principal shareholder or owner of the corporation conducts his private and corporate business on an interchangeable or joint basis as if they were one, then he is without standing to complain when an injured party does the same." *Bone Constr. Co. v. Lewis*, 148 Ga. App. 61, 63 (250 SE2d 851) (1978). There is no evidence that Teal, who was neither the principal shareholder nor owner of State Express, operated that company in a manner other than was totally consistent with its status as a corporate entity separate from himself.

In imposing personal liability for the State Express account, it would appear that the trial court relied upon evidence concerning the manner in which Teal operated Trans-State and the manner in which he effectuated Trans-State's responsibilities toward consummation of the contract to purchase the assets of State Express. However, it would necessarily follow from the fact that what was being sought was Teal's personal liability for the debt of State Express that what was required to be shown was the "piercing of the corporate veil" between Teal and State Express, not that between Teal and Trans-State. Any action taken by Teal with regard to Trans-State would have no relevance to the issue of whether the corporate veil had been pierced as between Teal and State Express so as to make him personally liable for the debts of the latter corporation. The evidence relied upon by the trial judge concerning Teal's actions as the owner of Trans-State might constitute "factors to consider in disregarding the corporate fiction as between the two separate corporate entities [of State Express and Trans-State] and treating them as one, but [would] not [be] sufficient to establish that there is such unity of interest as between the corporations and [Teal] to treat them as one." *Farmers Warehouse v. Collins*, 220 Ga. 141, 149 (137 SE2d 619) (1964).

The theory of "piercing the corporate veil" cannot serve as the basis for a personal judgment against Teal for the State Express account. The most that the evidence shows is that Teal "operated" State Express between the time that that corporation agreed to sell certain of its assets to Trans-State and the time that that sale was consummated.

We turn to whether the judgment against Teal was authorized on the basis of his personal guaranty of the State Express account. The alleged agreement by Teal was oral and took place after the fuel had already been delivered and charged to State Express and payment had not been forthcoming. Thus, "[t]he instant case involves an alleged promise to assume an *existing debt* of a third party. The line of judicial decisions in which an oral promise has been held to constitute an original undertaking to assume the debt of another rather than a mere collateral promise contains a common factual element that is missing from the instant action — the extension of credit on goods and services, or a party otherwise changing his position, in reliance on the promise. [Cits.] . . . [Appellee has] demonstrated that it is not [his] intention to substitute [Teal] for the original debtor, [State Express], but instead to look to [Teal] *and* the corporation for payment by bringing suit against both. [Cit.] Any promises made by [Teal] were therefore collateral and came within the Statute of Frauds. [Teal] is not bound by any oral promises to [appellee] to assume any of the corporation's debt because a collateral promise to assume the debt of another must be in writing to be binding. [Cits.]" (Emphasis in original.) *Zagoria v. DuBose Enterprises*, 163 Ga. App. 880, 884-885 (296 SE2d 353) (1982), reversed on other grounds, 250 Ga. 844 (302 SE2d 674) (1983).

The evidence does show, however, that pursuant to this oral agreement Teal did in fact pay a portion of the delinquent State Express account. The question then becomes whether this part payment takes the oral contract outside the Statute of Frauds and renders the contract enforceable against Teal for that portion of the State Express account which remains unpaid. Our review of the evidence demonstrates that there was no consideration for the oral agreement by Teal to satisfy the unpaid State Express account. " '(A) promise to pay the pre-existing debt of another, without any detriment or inconvenience to the creditor, or any benefit secured to the debtor in consequence of the undertaking (Cits.) . . . is mere nudum pactum.' [Cit.]" *Zagoria v. DuBose Enterprises*, supra at 885. "As [Teal] was not legally bound to pay any portion of the debt, the voluntary payment of some of it furnished no basis for enforcing payment of the residue. No fraud was committed by the partial payment, but the whole operation of that act was in a direction opposite to fraud. It would surely be bad logic to say, that whoever, in pursuance of a void promise, voluntarily pays part of a debt, is thenceforth under a binding contract to pay the balance." *McGaughey Bros. v. Latham*, 63 Ga. 67, 70-71 (1879).

There was no evidence authorizing a finding that Teal was personally liable for the State Express account under the theory of either "piercing of the corporate veil" or guaranty. The trial court erred in

entering a judgment against Teal.

2. We turn to the question of whether the evidence authorized a finding that Trans-State was liable for the State Express account. The trial court apparently found that Trans-State was "trading as" State Express at the time the underlying debt was incurred and, on this basis, imposed liability on the former corporation for the account of the latter. Our review of the transcript demonstrates no evidence which would support such a finding. The evidence does show that before final consummation of the contract of sale of certain assets by State Express to Trans-State, Teal was both operating State Express and functioning as Trans-State's owner. However, the evidence does not demonstrate that State Express was being operated by Teal as the mere alter ego of Trans-State. See *Farmers Warehouse v. Collins,* supra at 150. What the evidence shows is that before certain of State Express' assets were finally transferred to Trans-State, State Express was operated as a separate corporation, incurring debts and receiving compensation, and that Trans-State availed itself of the State Express assets only after they had been finally transferred to it. There was no basis for asserting that Trans-State was liable for the account of a separate corporate entity, and the trial court erred in entering judgment against Trans-State.

*Judgment reversed. Deen, P. J. and Banke, J., concur.*

Decided March 5, 1984 —
Rehearing denied March 19, 1984.

*Abraham A. Sharony, Neil C. Gordon,* for appellants.
*Roy E. Barnes,* for appellee.