## 74560. EARNEST v. MERCK.
### (358 SE2d 661)

BIRDSONG, Chief Judge.

Summary Judgment — Corporate Veil. On October 31, 1985, Charles Earnest purchased a home from Executive Builders, Inc. The home was located near Lake Sinclair. Its source of water was a deep well. Earnest apparently dealt with his sister-in-law, Kathy Earnest, in the negotiations for the sale of the house. Kathy Earnest was an agent for Merck Realty. The home was built and owned by Executive Builders, and John Merck was the corporation's president. Executive

Builders used Merck Realty as the selling agent. John Merck was the president of Merck Realty. John Merck also was the broker sponsoring Merck Realty. During the negotiations for the sale of the house and land, Charles Earnest asked his sister-in-law about the water supply and Kathy referred Charles Earnest to John Merck. Merck informed Earnest that the well should supply approximately four gallons of water per minute which should be sufficient to supply domestic needs. Charles Earnest decided to purchase the house. The real estate sales contract was signed by Earnest as purchaser and reflected the selling agency as Merck Realty. The agent was shown as Kathy Earnest and the seller was shown as Executive Builders, Inc. with John Merck signing as president. The warranty deed from Executive Builders was signed by John Merck, as president. Also the record contains a copy of the contract between the well digger and Merck. That contract shows the well digger as the one party and the other as John Merck on behalf of Merck Realty. The well contract shows that the services were rendered on behalf of Merck Realty Company.

After Earnest accepted delivery of the house, in just a few days, it became apparent the well would not deliver even 2 or 3 gallons a minute and as a result the water supply for the house was wholly inadequate. Extended negotiations for an adequate water supply did not result in an acceptable compromise. Merck sued the well digger for breach of contract and recovered almost $5,000 in damages. However, none of that money has been credited to Earnest. It is uncontested that the funds for payment of the well came from Executive Builders and the recovery from the well digger was deposited to the account of Executive Builders.

Because of the inability of Merck and Earnest to reach an acceptable agreement as to the source of an adequate water supply, Earnest brought this complaint against Executive Builders, Inc., Merck Realty, and John Merck individually, seeking to rescind the contract and recover damages. Each of the defendants moved for summary judgment. The trial court denied summary judgment to the two corporate defendants but granted summary judgment to John Merck in his individual capacity. Earnest brings this appeal asserting as his lone enumeration of error the grant of summary judgment to John Merck individually. *Held*:

Earnest contends there are material issues of fact as to whether John Merck acted in his individual capacity so as to make the grant of summery judgment to Merck as an individual an erroneous ruling. Earnest contends that when he talked with Merck about the well and water capacity prior to the sale of the house he was not aware of whether he was accepting assurances from Merck in his individual capacity or as an officer of Executive Builders or Merck Realty. Earnest

also points out in his brief that Merck sued the well digger in his own name and not that of Executive Builders or Merck Realty. The recovery was in Merck's name. Lastly, Earnest points out that Merck was the only person involved in each of the corporate actions in the sale of the house and the promises and actions involved in the furnishing of the well water.

In contradiction thereto, the trial court was made aware that Executive Builders is a corporation composed of four stockholders, not a sole proprietorship. Merck Realty is a corporation composed of two stockholders. It was made clear that Executive Builders built, owned and sold the house in question. The offer to purchase the home was made by Earnest through his sister-in-law to Merck Realtors, not Merck individually. The offer to purchase was accepted by Executive Builders. The warranty deed was executed by Executive Builders through Merck as president. The closing statement clearly reflects that Executive Builders was the seller. Thus all documents executed by both parties indicated to Earnest that he was dealing with corporate entities.

All corporate bodies perforce must operate through individuals. The mere operation of corporate business does not render one personally liable for corporate acts. *Trans-State v. Barber*, 170 Ga. App. 372, 374 (317 SE2d 242). The corporate veil may be pierced where the parties themselves have disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control. We have not been presented with nor found any evidence in this record to indicate that Merck, in addition to acting as the principal operating officer of the corporate bodies involved, also conducted his private and corporate business on an interchangeable or joint basis as if they were one. See *Bone Constr. Co. v. Lewis*, 148 Ga. App. 61, 63 (250 SE2d 851). Moreover, all the documents signed by Earnest reflect that Merck signed in a representative capacity. Though Merck made certain oral statements (i.e., puffing) to Earnest as to the capacity of the well, Earnest had been referred by a sales agent to the president of the realty company. The documents of the sale contained written warranties pertaining to the house as well as to the utilities (including water). This warranty was signed by Merck in a representative capacity. Merck's oral statements may be admissible to explain the meaning of the written warranty (subject to the statute of frauds) but assuming such to be the case, there is no evidence short of speculation that Merck was acting in an individual capacity whereas in apposition, the records show Earnest was aware by written documents that Merck was acting only in a representative capacity. See *Zagoria v. DuBose Enterprises*, 163 Ga. App. 880, 884 (296 SE2d 353).

In relation to the argument that Merck sued in his own name for

the recovery of damages for a defective well, there are undisputed facts that again reflect Merck was not acting in his own behalf. It is undisputed that the cost of digging the well and all future efforts to correct the deficient supply of water was made by Executive Builders. The money recovered from the well digger was deposited to the account of Executive Builders. The statement of charges for the well digging was addressed to John Merck, c/o Merck Realty, and the services were shown to have been rendered on behalf of Merck Realty. Lastly there is no showing that the lawsuit between Merck and the well digger was in trust for Earnest or on Earnest's behalf. In short, whether Merck sued in an individual or representative capacity casts no further light on the issue raised by Earnest in this appeal for he was not a party to that action and thus had no privity thereto.

We conclude that the suit against Executive Builders and Merck Realty cannot proceed properly against their corporate officers in their individual capacities in the absence of compelling and persuasive reason showing the propriety of piercing the corporate veil. *Farmers Warehouse of Pelham v. Collins*, 220 Ga. 141, 150 (137 SE2d 619); *Lincoln Land Co. v. Palfery*, 130 Ga. App. 407, 411 (203 SE2d 597). Earnest has not raised a material issue that in essence John Merck was nothing more than the alter ego of the two co-defendant corporations or that Merck made the corporate assets vehicles for his own private affairs or that there was such a unity of interest and ownership that separate personalities of the corporation and owner did not exist. *Sheppard v. Tribble Heating &c.* 163 Ga. App. 732 (1) (294 SE2d 572). There was no error in the grant of summary judgment to Merck in his personal capacity. *Holland v. Sanfax Corp.*, 106 Ga. App. 1, 4 (126 SE2d 442).

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED JUNE 10, 1987.

*Donald W. Huskins*, for appellant.
*George D. Lawrence*, for appellee.