A00A0997. ATLANTIC COAST CABLE, INC. et al. v. MALLORY
et al.
(540 SE2d 206)

BARNES, Judge.
Atlantic Coast Cable, Inc. and Richard R. Wilbanks (collectively "ACC") sued Peter A. Mallory and Leonard Gregory Watts, seeking to pierce the corporate veil of Questar, Inc. and obtain a judgment against Mallory and Watts personally for debts owed by the corporation. ACC presented evidence to a jury regarding the work ACC had

---

performed for Questar in 1988 and 1989, laying and maintaining cable for a new cable system outside LaGrange. In a previous suit involving this debt, Questar consented to an entry of judgment against it for $200,000. The jury found for the plaintiffs and against both defendants in the amount of $227,143.71.

After first moving unsuccessfully for a directed verdict, Mallory and Watts moved for a judgment notwithstanding the verdict, which the trial court granted. ACC appeals, asserting that the trial court erred in granting the defendants' motion. For the reasons that follow, we reverse.

1.

> The motion for judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a "one-way" verdict proper, judgment n.o.v. should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict. And this approach governs the actions of appellate courts as well as trial courts.

(Citation and punctuation omitted.) *Denson v. City of Atlanta*, 202 Ga. App. 325, 326 (1) (414 SE2d 312) (1991). "A directed verdict (and judgment n.o.v.) is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, *demands* a certain verdict." (Citation and punctuation omitted; emphasis in original.) *MARTA v. Mehretab*, 224 Ga. App. 263, 266 (2) (480 SE2d 310) (1997).

2. To affirm the trial court's grant of a judgment n.o.v., we must find no evidence showing abuse of the corporate form.

> Although great caution should be exercised in disregarding or going behind the corporate entity, it may be done where the evidence shows that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice.

(Citation and punctuation omitted.) *Pope v. Professional Funding Corp.*, 221 Ga. App. 552, 553 (1) (472 SE2d 116) (1996). When the issue is litigated, as it was here, the decision is generally entrusted to the jury. Id.

To pierce the corporate veil and hold an individual liable for corporate debts on the ground that the corporation was a mere alter ego of the individual, the plaintiff must show that the individual defendants abused the corporate form. *Amason v. Whitehead*, 186 Ga. App.

320, 322 (367 SE2d 107) (1988).

> [I]t must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and that to adhere to the doctrine of corporate entity would promote injustice or protect fraud.

(Citation and punctuation omitted.) *Marett v. Professional Ins. Careers,* 201 Ga. App. 178, 180-181 (1) (b) (410 SE2d 373) (1991).

With regard to Mallory, ACC presented evidence at trial that Questar paid Mallory a total of $330,000 between May and August 1989,[1] while ACC's invoices to Questar went unpaid. Mallory personally paid third parties to buy franchise rights on Questar's behalf, and his personal account was debited $16,042 for a wire transfer to a third party on Questar's behalf.

Mallory testified that the $330,000 from Questar constituted loan repayments. However, the only documentation of these "loans" was checks or account debits from his personal account to Questar, Watts, or to third parties on Questar's behalf that totaled only $311,372.[2] Mallory, who was president of Bank of Troup County from 1986 to 1989 or 1990, did not have any formal loan documents with Questar.

With regard to Watts, ACC presented evidence that he received a $200,000 check from Questar in August 1989, which he used to buy a 30-day certificate of deposit in his own name. He testified that this money was not a loan repayment, but did not explain what this money was for. After 30 days, he returned the funds to the corporate account. Watts paid personal income tax on the interest he earned on the $200,000.

"The corporate veil may be pierced where the parties themselves have disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control." *Earnest v. Merck*, 183 Ga. App.

---

[1] Checks from Questar to Mallory:

| | | | |
|---|---|---|---|
| 5/15/89 | $ 80,000 | 7/11/89 | $100,000 |
| 6/8/89 | 100,000 | 8/11/89 | 50,000 |

[2] Checks from Mallory to others:

| | | | | |
|---|---|---|---|---|
| 7/14/88 | Greg Watts | $ 2,330 | 12/8/88 | Questar | $30,000 |
| 7/28/88 | Greg Watts | 5,000 | 12/28/88 | John Weeks Ent. (debit) | 16,042 |
| 8/23/88 | Questar | 40,000 | 1/17/89 | Wayne Lee | 10,000 |
| 9/12/88 | Questar | 10,000 | 1/17/89 | T. A. Cox | 10,000 |
| 10/11/88 | Questar | 40,000 | 1/24/89 | Questar | 35,000 |
| 11/23/88 | Questar | 113,000 | | | |

271, 273 (358 SE2d 661) (1987). Here, ACC presented evidence that Mallory paid corporate debts to third parties from his personal account and wrote checks to Watts, not to the corporation. Watts took corporate money, bought a CD in his name, and kept the interest the corporate money earned.

Furthermore, Mallory testified that he ceased acting as Questar's president in 1989, long before Questar entered into its sales contract with McDonald Corporation or paid him $330,000. However, ACC then presented evidence that Mallory had signed numerous documents as Questar's president in 1989, after the time he claimed he was no longer president. The jury was entitled to consider this evidence in evaluating the credibility of Mallory's testimony that the $330,000 consisted entirely of loan repayments.

As the evidence for Mallory and Watts was not plain, palpable, and indisputable, some evidence supported the jury verdict, and all of the evidence did not demand a verdict for Mallory and Watts, the trial court erred in granting the judgment n.o.v. and setting aside the jury verdict. *Bryant v. Colvin*, 160 Ga. App. 442, 445 (287 SE2d 238) (1981).

*Judgment reversed. Blackburn, P. J., and Eldridge, J., concur.*

DECIDED SEPTEMBER 28, 2000.

*Andersen, Davidson & Tate, William M. Ray II, Christopher R. Stovall*, for appellants.

*Andre, Blausten & Green, S. Wade Malone, Kenneth D. Teal, Hoke J. Thomas, Jr.*, for appellees.