A11A1053. MEREDITH et al. v. THOMPSON et al.
(719 SE2d 592)

PHIPPS, Presiding Judge.

Michelle Thompson and other residents of East Point sued William C. Meredith Company, Inc. (the corporation), alleging that operations at the corporation's nearby facility were tortiously emitting chemicals and noxious odors upon their properties and that they were entitled to injunctive relief and damages. Among the other defendants,[1] the residents named three individuals affiliated with the corporation: (i) Cleveland G. Meredith, the sole shareholder of the corporation and the chairman of its board; (ii) Scott Schneider, the corporation's president; and (iii) Paul M. Castle, the corporation's vice president and general manager. This appeal concerns the denial of a motion for summary judgment filed by these individual defendants, who maintain that they cannot be held personally liable for damages in connection with their roles in the corporation. For reasons that follow, we vacate the denial and remand for proceedings not inconsistent with this opinion.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We use a de novo standard of review on appeal from a grant [or denial] of summary judgment, and view the evidence and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.[2]

The corporation is in the business of manufacturing and treating

---

[1] The other defendants included Meredith Pole & Timber Co., Inc., KMG Chemicals, Inc., and KMG-Bernuth, Inc. Issues in this appeal, however, do not pertain to those entities.

[2] *Kaplan v. City of Sandy Springs,* 286 Ga. 559, 560 (1) (690 SE2d 395) (2010) (citations omitted); OCGA § 9-11-56 (c); *Norton v. Budget Rent A Car System,* 307 Ga. App. 501 (705 SE2d 305) (2010) (we review the denial of summary judgment de novo, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party).

wooden utility poles. The corporation obtains unfinished poles from various third parties; at its East Point facility, the corporation then treats the poles with a solution containing the preservative/pesticide pentachlorophenol ("penta"). The treatment process involves placing the timber into a retort (a huge vessel), which contains the solution. Once treated, the poles are either sent to customers or stored upon the facility's yard. According to the residents, the corporation's operations emit penta and other chemicals into the air.

Penta is regulated by the Environmental Protection Agency (EPA). Consequently, it may be sold only to licensed applicators; the corporation is operating under such a license, and the EPA has approved the use of penta for treating wooden poles. While the corporation's facility is located in the vicinity of residential neighborhoods, it is situated upon property that is zoned light industrial, where it has operated since 1921. The corporation employs approximately 18 individuals to run the treatment and manufacturing process. And according to the individual defendants, at all relevant times, the corporation was duly permitted by the Georgia Environmental Protection Division (EPD) to operate its wood preservative facility.

Alleging nonetheless that the East Point facility was tortiously emitting chemicals and noxious odors upon their properties, the residents set forth in their complaint numerous theories against the three named individuals affiliated with the corporation. During discovery, these individual defendants described their corporate roles as follows. Meredith deposed that his involvement with the corporation focused on sales and marketing. Schneider stated that his responsibilities included handling customers, scheduling logistics, and buying and selling certain wood. Castle stated that he was responsible for supervising the manager of quality control and treating, as well as the manager of shipping and receiving.

The individual defendants moved for summary judgment, pointing out that the numerous claims against them stemmed from alleged chemical and odor emissions from the corporation's operations. They cited the principle that a corporation possesses a legal existence separate and apart from that of its officers, directors, and shareholders so that the operation of corporate business does not render officers, directors, and shareholders personally liable for corporate acts.[3] They argued that the residents had demonstrated no basis for disregarding the legal separateness.[4] Additionally, the

---

[3] See *Benschoter v. Shapiro*, 204 Ga. App. 56, 57 (1) (418 SE2d 381) (1992); *Lawton v. Temple-Warren Ford, Inc.*, 203 Ga. App. 222, 223 (b) (416 SE2d 527) (1992).

[4] See *Farmers Warehouse &c. v. Collins*, 220 Ga. 141, 150 (2) (d) (137 SE2d 619) (1964) (noting that great caution should be exercised by the court in disregarding the corporate entity and that neither a portion nor all of the natural persons who compose a corporation, or who own its stock and control its affairs, are the corporation itself).

individual defendants acknowledged the principle that a corporate officer, director, or shareholder

> who takes part in the commission of a tort by the corporation is personally liable therefor, but an officer [or director or shareholder] who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or cooperated therein.[5]

They argued, however, that there was no evidence of any such tortious act that would entitle the residents to damages from them; that the evidence instead showed that they had operated a lawful business in compliance with local, state, and federal laws and regulations governing air emissions; and that their roles in overseeing the overall operations of the business were insufficient to trigger personal liability for damages.[6] The individual defendants cited the principle that mere operation of a corporate business does not render one personally liable for corporate acts.[7]

The residents countered that the individual defendants were not entitled to summary judgment on the asserted theories of nuisance,[8] nuisance per accidens,[9] trespass,[10] and common law negligence.[11] The

---

[5] *Lawton*, supra (citation and punctuation omitted); see *Smith v. Hawks*, 182 Ga. App. 379, 384 (4) (355 SE2d 669) (1987) (noting that a corporation is a separate and distinct legal entity from its officers, stockholders, or agents).

[6] See, e.g., *Kilsheimer v. State*, 250 Ga. 549, 550 (299 SE2d 733) (1983) (cardinal rule of corporate law is that the corporation possesses a legal existence separate and apart from that of its officers, employees, shareholders, and directors; suit against the corporation cannot proceed against its members in their personal capacities unless some persuasive reason is presented for piercing the corporate veil); *Amason v. Whitehead*, 186 Ga. App. 320, 322 (367 SE2d 107) (1988) (sole ownership of a corporation by one person or another corporation is not a factor, and neither is the fact that the sole owner uses and controls it to promote his ends).

[7] *Earnest v. Merck*, 183 Ga. App. 271, 273 (358 SE2d 661) (1987) ("All corporate bodies perforce must operate through individuals. The mere operation of corporate business does not render one personally liable for corporate acts."); see *Hester Enterprises v. Narvais*, 198 Ga. App. 580, 581 (1) (402 SE2d 333) (1991).

[8] See OCGA § 41-1-1 ("A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance.").

[9] See *Galaxy Carpet Mills v. Massengill*, 255 Ga. 360-361 (1) (338 SE2d 428) (1986) ("'[A] lawful business may, by reason of its location in a residential area, cause hurt, inconvenience, and damage to those residing in the vicinity and become a nuisance per accidens (a nuisance by reason of circumstances and surroundings), against which an injunction will be granted.'") (citations and punctuation omitted).

[10] The residents cited OCGA §§ 1-3-3 (20) (defining "trespass" to mean: "any misfeasance, transgression, or offense which damages another's health, reputation, or property") and 51-9-1 ("The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie.").

[11] The residents initially asserted also theories of negligence per se and strict liability for

residents argued that the individual defendants could be held personally liable for having directed, controlled, and participated in the discharge of penta and other chemicals into the air and thus upon their properties. The residents described the corporation as "a family owned and operated business" and characterized the three individual defendants as "the company." The residents cited evidence which they claimed showed that the three individual defendants had offices at the corporation's East Point facility; that they were aware of the manner in which penta was being used at the facility; that they were aware of community complaints regarding odors and chemical emissions; that they knew that penta was a hazardous substance; that they had been involved with environmental compliance issues; that they held the authority and discretion regarding capital expenditures; and that they had made no plans to relocate the facility or change operations to reduce the use of penta or otherwise modify their facility to reduce emissions. Additionally, the residents disagreed with the individual defendants' claim of operating a business in a lawful manner. In particular, the residents argued, as alleged in their complaint, that the chemical emissions constituted negligence and a nuisance;[12] the residents further asserted that the corporation's operations were in violation of the Georgia Air Quality Act;[13] the Rules of the Georgia Department of Natural Resources, Environmental Protection Division for Air Quality Control;[14] the federal Clean Air Act;[15] and the federal Clean Air Act Regulations.[16]

Alternatively, the residents took the position that, because the individual defendants had not supported their motion with any sworn statement(s) that they had *not* directed, participated in, or taken part in the underlying conduct about which the residents were complaining, the individual defendants had not pierced their pleadings and consequently were not entitled to summary judgment.

Adopting this latter position, the trial court denied the motion,

---

abnormally dangerous activities. Notably, their counsel informed the court at the summary judgment hearing that a nuisance per se theory had been abandoned; and the court granted summary judgment on the strict liability theory because the residents had made no argument to oppose the summary judgment motion.

[12] See, however, n. 11, supra, regarding nuisance per se.

[13] OCGA § 12-9-1 et seq. See, e.g., OCGA §§ 12-9-23 (d) (providing for civil penalties recovered for violating Act to be paid into state treasury to the credit of the general fund); 12-9-24 (providing for criminal penalties for violating Act).

[14] Ga. Comp. R. & Regs. r. 391-3-1 et seq.

[15] 42 USC § 7401 et seq. See, e.g., 42 USC § 7604 (allowing citizen suits and providing for disposition of penalties received).

[16] 40 CFR § 50.1 et seq.

explaining, "Neither an unsupported denial of the plaintiffs' allegations, nor an unsupported assertion that the plaintiffs had no evidence to prove their allegations will support summary judgment." The court determined:

> In sum, the defendants' motion for summary judgment based upon a naked allegation that they did not engage in the conduct alleged in the plaintiffs' complaint does not provide a basis for a grant of summary judgment, nor as a matter of burdens on summary judgment does it require the plaintiffs as non-movants to come forward with any evidence. They are under those circumstances entitled to rest on the allegations contained in the pleadings which are sufficient to state a claim against the individual defendants.

The trial court certified its order for immediate review, and this court granted the individual defendants' application for interlocutory review. For reasons explained below, we vacate the denial of summary judgment and remand the case with direction.

To be entitled to summary judgment, the individual defendants were not required to present sworn statements as contemplated by the trial court's ruling. "Under *Lau's Corp. v. Haskins*,[17] [a defendant] is not required to prove the negative fact but may rely on the absence of proof by [the plaintiff]."[18] Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[19]

> Thus, to prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law. A defendant may do this by *either* presenting evidence negating an essential element of the plaintiff's claims *or* establishing from the record an absence of evidence to support such claims. Thus, the rule with regard to summary judgment is that a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is

---

[17] 261 Ga. 491 (405 SE2d 474) (1991).

[18] *Herrin Business Products v. Ergle*, 254 Ga. App. 713, 716 (2) (563 SE2d 442) (2002) (footnote omitted).

[19] OCGA § 9-11-56 (c).

an absence of evidence to support any essential element of the nonmoving party's case.[20]

Where a defendant moving for summary judgment "discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue."[21]

As detailed above, the individual defendants did not attempt to affirmatively disprove that they had engaged in the particular acts about which the residents complained; rather, the individual defendants argued that the evidence did not show that they were involved in or had performed any particular act constituting a tort for which the residents were entitled to recover damages from them personally. To this end, the individual defendants' counsel conceded at the summary judgment hearing that there was no dispute that they had "operated the business"; counsel argued that the evidence nevertheless showed that the individual defendants' particular acts were lawful and that his clients could not be held personally liable inasmuch as they had acted only within their corporate capacities in performing functions for the corporation.

And in this appeal, the individual defendants contest the denial of their summary judgment motion as erroneously eviscerating the corporate shield afforded to officers, directors, and shareholders, thereby impermissibly exposing their personal assets to liability for the (alleged) torts of the corporation. They maintain that they cannot be held personally liable for damages because they were involved only in the routine operations of the business and there was a complete absence of any violation of federal or state air emissions law and/or regulation.

The trial court did not reach this asserted ground, however, having denied the individual defendants' motion for summary judgment for the reason that they had not presented sworn statements to negate alleged facts. Because the individual defendants were not so limited in their quest for summary judgment, the denial of summary judgment based solely on that ground was premature.[22] Given the numerous theories of recovery asserted against each of the three

---

[20] *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted; emphasis supplied); see *Lau's Corp.*, supra.

[21] *Lau's Corp.*, supra, citing OCGA § 9-11-56 (e) ("When a motion for summary judgment is made and supported as provided in this Code section, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Code section, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."); see *Cowart*, supra.

[22] See *Cowart*, supra.

individual defendants,[23] we vacate the denial of the individual defendants' motion for summary judgment such that the trial court can consider in the first instance the remaining issues pertaining to the ground asserted by the individual defendants.[24]

*Judgment vacated and case remanded with direction. Andrews and McFadden, JJ., concur.*

DECIDED NOVEMBER 18, 2011.

*Beloin, Brown, Blum & Wise, Kyler L. Wise, Carlock, Copeland & Stair, Charles M. McDaniel, Jr., Tonya F. Stokes, McKenna, Long & Aldridge, James B. Manley, Jr., Jill C. Kuhn, Wilson, Brock & Irby, Larry M. Dingle, John K. Eldridge,* for appellants.

*Andrews, Knowles & Princenthal, Gary B. Andrews, Craig C. Knowles, Adam P. Princenthal, Doffermyre, Shields, Canfield, Knowles & Devine, Ralph I. Knowles, Jr., Leslie J. Bryan, Donald D. J. Stack, Robert B. Jackson IV,* for appellees.

---

[23] Also, the record does not make clear which of the residents' various theories of recovery for damages remained viable. For example, the corporation also moved for summary judgment, and it appears that some of the trial court's rulings favorable to the corporation were intended to apply also to the individual defendants. What is more, according to the individual defendants, the sole issue before this court was whether they "may be held personally liable for [the residents'] nuisance per accidens and trespass claims." It does not appear, however, that the residents agree that only these two substantive theories of recovery for damages remain. On remand, therefore, the trial court can specify the remaining viable theories of recovery, if any.

[24] See generally *Community Renewal &c. v. Nix*, 279 Ga. 840, 842 (2) (621 SE2d 722) (2005) (declining to apply a right-for-any-reason analysis, where denial of summary judgment was based on an erroneous legal theory and trial court's ruling left other issues unresolved); *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002) (appellate courts retain discretion in determining whether to apply the right-for-any-reason rule and consider alternative legal theories not addressed by the trial court in its order granting summary judgment, or to vacate order and remand for the trial court to consider alternative legal theories in the first instance); *United Healthcare &c. v. Ga. Dept. of Community Health*, 293 Ga. App. 84, 93 (2) (d) (666 SE2d 472) (2008).